# 22-1829-cr(L), 22-2076-cr(CON)

## United States Court of Appeals

*for the*

## Second Circuit

───────────◆───────────

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

ALEJANDRO DeJESUS TAVAREZ, ALEXANDER TAVAREZ ESPINAL, JAN LEONEL VAZQUEZ FAMILIA, AKA Jan Vazquez, JAHDIER DOWDELL, MAURICE GRAVES, KAMIYA JOE, AKA K-Joe, JONAH SUTTON, Sealed Defendant #7, DIANISHA TRAPPS, AKA Dutchess, TACARRA NEWTON, AKA Sealed Defendant #9, AKA TNewt, AKA Tucott, AKA Flame, TYWONE HASKINS, YOAN RODRIGUEZ, AKA Sealed Defendant #13, TREYQUWAN RUCKER, AKA Sealed Defendant #14, SHATEEK BROWN, AKA Teek, AKA Stu,

*Defendants,*

JOSHUA STANLEY, AKA 40,

*Defendant-Appellant.*

─────────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## APPENDIX

LUCAS ANDERSON
*Of Counsel*
ROTHMAN, SCHNEIDER, SOLOWAY
& STERN, LLP
*Attorneys for Defendant-Appellant*
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-5500

i

## TABLE OF CONTENTS

| | Page |
|---|---|
| United States District Court Docket Entries | A-1 |
| Indictment, dated February 18, 2021 | A-8 |
| Transcript of Plea , dated June 10, 2021 | A-20 |
| Plea Agreement, dated June 10, 2021 | A-35 |
| Preliminary Order of Forfeiture for a Money Judgment, dated August 13, 2021 | A-54 |
| Government's Sentencing Memorandum, dated June 24, 2022 | A-57 |
| Defendant's Sentencing Memorandum, dated August 3, 2022 | A-60 |
| Government's Sentencing Reply Memorandum, dated August 5, 2022 | A-67 |
| Excerpt from Transcript of Sentencing, dated August 10, 2022 | A-70 |
| Judgment, dated August 18, 2022 | A-83 |
| Notice of Appeal, filed August 21, 2022 | A-90 |

A-1

APPEAL

# U.S. District Court
# Northern District of New York – Main Office (Syracuse) [NextGen CM/ECF Release 1.7 (Revision 1.7.1)] (Syracuse)
# CRIMINAL DOCKET FOR CASE #: 5:21–cr–00057–FJS–11

Case title: USA v. Tavarez et al

Date Filed: 02/18/2021

Date Terminated: 08/18/2022

Assigned to: Senior Judge
Frederick J. Scullin, Jr

**Defendant (11)**

**Joshua Stanley**                                    represented by    **George F. Hildebrandt**
*TERMINATED: 08/18/2022*                                            George F. Hildebrandt, Attorney at Law
*also known as*                                                     Merchants Commons – 10th Floor
"40"                                                                220 South Warren Street
*TERMINATED: 08/18/2022*                                            Syracuse, NY 13202
                                                                   315–434–5656
                                                                   Fax: 315–434–5940
                                                                   Email: george@georgehildebrandt.com
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*
                                                                   *Designation: CJA Appointment*

**Pending Counts**                                    **Disposition**

21:846=CD.F CONSPIRACY TO                             30 months imprisonment with a term of supervised
DISTRIBUTE CONTROLLED                                 release of 3 years to follow. Special Assessment:
SUBSTANCE                                             $100.
(1)

**Highest Offense Level
(Opening)**

Felony

**Terminated Counts**                                 **Disposition**

None

**Highest Offense Level
(Terminated)**

None

**Complaints**                                        **Disposition**

None

**Plaintiff**
**USA**                                               represented by    **Nicolas Commandeur**
                                                                   Office of United States Attorney –
                                                                   Syracuse Office
                                                                   100 South Clinton Street
                                                                   P.O. Box 7198
                                                                   Syracuse, NY 13261
                                                                   315–448–0672

A-2

Fax: 315–448–0658
Email: nicolas.commandeur@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Elizabeth A. Conger**
U.S. Attorney's Office, Northern District of
New York
100 South Clinton St.
Syracuse, NY 13261–7198
315–448–0672
Fax: 315–448–0689
Email: Elizabeth.Conger@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Tamara Thomson**
Office of United States Attorney –
Syracuse Office
100 South Clinton Street
P.O. Box 7198
Syracuse, NY 13261
315–448–0672
Fax: 315–448–0658
Email: tamara.thomson@usdoj.gov
*TERMINATED: 03/09/2022*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/18/2021 | 27 | FELONY INDICTMENT: as to Alejandro DeJesus Tavarez (1) count(s) 1, 2, Alexander Tavarez Espinal (2) count(s) 1, 3, Jan Leonel Vazquez Familia (3) count(s) 1, 2, Jahdier Dowdell (4) count(s) 1, 4, 6, Maurice Graves (5) count(s) 1, 5, 7, 17–26, Kamiya Joe (6) count(s) 1, Sealed Defendant #7 (7) count(s) 1, Dianisha Trapps (8) count(s) 1, Tacarra Newton (9) count(s) 1, Tywone Haskins (10) count(s) 1, 27–30, Joshua Stanley (11) count(s) 1, Shateek Brown (12) count(s) 1, 8–16. (nmk) (Main Document 27 replaced on 2/25/2021) (nmk, ). (Entered: 02/24/2021) |
| 02/18/2021 | | TEXT Minute Entry for proceedings held before U.S. Magistrate Judge Andrew T. Baxter: GRAND JURY makes a partial report and returns Indictment. Application to Seal Indictment and Arrest Warrants filed by USA. Indictment is authorized for filing under seal. Sealing and Public Sealing orders are signed. Arrest Warrants are signed and issued. Tally Sheet is ordered sealed. Appearances: Nicolas Commandeur, AUSA, Grand Jury Foreperson, Grand Jury Steno. (nmk) (Entered: 02/24/2021) |
| 02/18/2021 | 30 | Application to Seal Indictment filed by USA as to Alejandro DeJesus Tavarez, Alexander Tavarez Espinal, Jan Leonel Vazquez Familia, Jahdier Dowdell, Maurice Graves, Kamiya Joe, Sealed Defendant #7, Dianisha Trapps, Tacarra Newton, Tywone Haskins, Joshua Stanley, Shateek Brown. (nmk) (nmk, ). (Entered: 02/24/2021) |
| 02/18/2021 | 31 | ORDER: granting 30 Application to Seal Indictment as to Alejandro DeJesus Tavarez (1), Alexander Tavarez Espinal (2), Jan Leonel Vazquez Familia (3), Jahdier Dowdell (4), Maurice Graves (5), Kamiya Joe (6), Sealed Defendant #7 (7), Dianisha Trapps (8), Tacarra Newton (9), Tywone Haskins (10), Joshua Stanley (11), Shateek Brown (12). Signed by U.S. Magistrate Judge Andrew T. Baxter on 2/18/2021. (nmk) (Additional attachment(s) added on 2/25/2021: # 1 Public Sealing Order) (nmk, ). (Entered: 02/24/2021) |
| 02/24/2021 | 26 | NOTICE OF ATTORNEY APPEARANCE: George F. Hildebrandt appearing for Joshua Stanley (Hildebrandt, George) (Entered: 02/24/2021) |
| 02/24/2021 | 32 | TEXT ORDER: Upon the oral application of the Government, this case is UNSEALED as to Alejandro DeJesus Tavarez, Alexander Tavarez Espinal, Jan Leonel Vazquez Familia, Jahdier Dowdell, Maurice Graves, Kamiya Joe, Sealed Defendant #7, Dianisha Trapps, Tacarra Newton, Tywone Haskins, Joshua Stanley, Shateek |

**A-3**

| | | |
|---|---|---|
| | | Brown. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 2/24/2021. (nmk) (Entered: 02/24/2021) |
| 02/24/2021 | | NOTICE OF HEARING as to Dianisha Trapps, Tywone Haskins and Joshua Stanley Initial Appearance set for 2/24/2021 at 1:30 PM before US Magistrate Judge Andrew T. Baxter. (jdp) (Entered: 02/24/2021) |
| 02/24/2021 | | TEXT Minute entry for an Initial Appearance on 2/24/2021 as to Dianisha Trapps, Joshua Stanley, Tywone Haskins; AUSA for the Government; K. Zimmer, Esq. for Deft Trapps; M. Jubelt, Esq. for Deft Haskins; G. Hildebrandt, Esq. for Deft Stanley; C. Tafel, U.S. Probation; J. Hibbard, Court Reporter. Govt. moves to detain all defts. Defendants consent to proceeding by video due to the circumstances arising from the COIVD–19 pandemic. Financial affidavits submitted prior to court is reviewed on the record. Defendants affirm that the information contained within the affidavit is true and Judge Baxter finds the defendants to be eligible for the appointment of counsel. Defendants are advised of the charges and maximum penalties. Detention hearing set for Deft. Trapps on 3/1/2021 at 11:30AM before Magistrate Judge Andrew T. Baxter; Detention Hearing set for Deft Stanley on 3/1/2021 at 12:00PM before Magistrate Judge Andrew T. Baxter; Detention Hearing set for Deft. Haskins on 3/1/2021 at 1:30PM before Magistrate Judge Andrew T. Baxter; Defts remanded to custody of US Marshals. (1:36PM 1:51PM) (jdp ) (Entered: 02/24/2021) |
| 02/24/2021 | 35 | CJA 23 Financial Affidavit by Joshua Stanley. (nmk) (Entered: 02/25/2021) |
| 02/24/2021 | 40 | TEXT ORDER (CJA 20): Appointment of Attorney George F. Hildebrandt for Joshua Stanley. Refer to the Court's website: http://www.nynd.uscourts.gov/criminal–justice–act for comprehensive information relating to court appointed representation. Attorneys are reminded that CJA vouchers are to be submitted to the court no later than 45 days after the final disposition of the case, unless good cause is shown. Please refer to Appendix II of the CJA Plan (Guidelines for Submitting Claims for Reimbursement Pursuant to the Criminal Justice Act of the Northern District of New York). So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 2/24/2021. (nmk) (Entered: 02/25/2021) |
| 02/25/2021 | | TEXT NOTICE OF HEARING as to Joshua Stanley: A Detention Hearing is set for 3/1/2021 at 12:00 PM via video before U.S. Magistrate Judge Andrew T. Baxter. (nmk) (Entered: 02/25/2021) |
| 02/25/2021 | 43 | ORDER: pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116182, 134 Stat. 894 (Oct. 21, 2020), to confirm the Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963). Signed by U.S. Magistrate Judge Andrew T. Baxter on 2/25/2021. (nmk) (Entered: 02/25/2021) |
| 02/26/2021 | 47 | MOTION for Protective Order by USA as to Alejandro DeJesus Tavarez, Alexander Tavarez Espinal, Jan Leonel Vazquez Familia, Jahdier Dowdell, Maurice Graves, Kamiya Joe, Jonah Sutton, Dianisha Trapps, Tacarra Newton, Tywone Haskins, Joshua Stanley, Shateek Brown. Response to Motion due by 3/19/2021. Reply to Response to Motion due by 3/26/2021 (Attachments: # 1 Proposed Order/Judgment)(Commandeur, Nicolas) (Entered: 02/26/2021) |
| 02/26/2021 | 48 | NOTICE OF ATTORNEY APPEARANCE: Tamara Thomson appearing for USA as co–counsel with Attorney Nicolas Commandeur *for the forfeiture aspect of the case;* (Thomson, Tamara) (Entered: 02/26/2021) |
| 02/26/2021 | | MOTION SCHEDULING NOTICE in case as to Alejandro DeJesus Tavarez, Alexander Tavarez Espinal, Jan Leonel Vazquez Familia, Jahdier Dowdell, Maurice Graves, Kamiya Joe, Jonah Sutton, Dianisha Trapps, Tacarra Newton, Tywone Haskins, Joshua Stanley, Shateek Brown re: 47 MOTION for Protective Order. ANY PARTY THAT HAS AN OBJECTION to this motion for the entry of a protective order must file a response by 3/5/2021. If no responses are filed, the protective order will be entered. *The government is not required to exchange discovery until the Court issues a decision on this motion.*. (bjw, ) (Entered: 02/26/2021) |
| 02/26/2021 | 53 | PRETRIAL SERVICES INVESTIGATION REPORT – [LODGED] as to Joshua Stanley. **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the** |

| | | |
|---|---|---|
| | | **defendant, and the presiding judge. Any further distribution or dissemination is prohibited.]** (dct, ) (Entered: 02/26/2021) |
| 03/01/2021 | | TEXT Minute Entry for Detention Hearing held on 3/1/2021 via video before U.S. Magistrate Judge Andrew T. Baxter as to Joshua Stanley: Prior to the proceeding, counsel are provided with the Pretrial Services Report. Defendant consents to proceeding by video due to the circumstances arising from the COVID–19 pandemic. Defendant waives his right to an immediate detention hearing, which Judge Baxter finds as knowing and voluntary. Defendant remanded to the custody of the U.S. Marshal. Appearances: Nicolas Commandeur, AUSA; George Hildebrandt, Esq. for defendant. USPO: Courtney Tafel. (Court Reporter: Jodi Hibbard. Time: 12:00 PM – 12:07 PM.) (nmk) (Entered: 03/01/2021) |
| 03/01/2021 | 63 | ORDER APPROVING WAIVER OF DETENTION HEARING: as to Joshua Stanley. Signed by U.S. Magistrate Judge Andrew T. Baxter on 3/1/2021. (nmk) (Entered: 03/01/2021) |
| 03/15/2021 | 75 | PROTECTIVE ORDER as to Alejandro DeJesus Tavarez, Alexander Tavarez Espinal, Jan Leonel Vazquez Familia, Jahdier Dowdell, Maurice Graves, Kamiya Joe, Jonah Sutton, Dianisha Trapps, Tacarra Newton, Tywone Haskins, Joshua Stanley, Shateek Brown. Signed by Senior Judge Frederick J. Scullin, Jr on 3/15/2021. (bjw, ) (Entered: 03/15/2021) |
| 03/15/2021 | | CLERK'S CORRECTION OF DOCKET ENTRY – Document 77 (Notice of Appearance) was deleted as it was a duplicate of the 76 Notice. (dpk) (Entered: 03/15/2021) |
| 03/18/2021 | 79 | CRIMINAL PRETRIAL SCHEDULING ORDER: as to Alejandro DeJesus Tavarez, Alexander Tavarez Espinal, Jan Leonel Vazquez Familia, Jahdier Dowdell, Maurice Graves, Kamiya Joe, Jonah Sutton, Dianisha Trapps, Tacarra Newton, Tywone Haskins, Joshua Stanley, Shateek Brown. Motions to be filed by 4/15/2021. Jury Trial is set for 5/17/2021 at 09:30 AM in Syracuse before Senior Judge Frederick J. Scullin, Jr. Signed by U.S. Magistrate Judge Andrew T. Baxter on 3/18/2021. (nmk) (Entered: 03/18/2021) |
| 04/02/2021 | 84 | STIPULATION by USA to 120 Day Extension of Time (Commandeur, Nicolas) (Entered: 04/02/2021) |
| 04/05/2021 | 85 | ORDER TO CONTINUE – Ends of Justice as to Alejandro DeJesus Tavarez, Alexander Tavarez Espinal, Jan Leonel Vazquez Familia, Jahdier Dowdell, Maurice Graves, Kamiya Joe, Jonah Sutton, Dianisha Trapps, Tacarra Newton, Tywone Haskins, Joshua Stanley, Shateek Brown Time excluded from 4/5/2021 until 8/3/2021. Jury Trial reset for 8/23/2021 10:00 AM in Syracuse before Senior Judge Frederick J. Scullin Jr.. Motions to be filed by 6/18/2021 on submit. Any change of plea to be held by 8/2/2021.. Signed by Senior Judge Frederick J. Scullin, Jr on 4/5/2021. (bjw, ) (Entered: 04/05/2021) |
| 05/05/2021 | 86 | Letter from George Hildebrandt as to Joshua Stanley requesting that Court schedule a detention hearing (Hildebrandt, George) (Entered: 05/05/2021) |
| 05/07/2021 | | TEXT NOTICE OF HEARING as to Joshua Stanley: A Detention Hearing is set for 5/13/2021 at 1:30 PM via video before U.S. Magistrate Judge Andrew T. Baxter. (kmc) (Entered: 05/07/2021) |
| 05/13/2021 | | TEXT Minute Entry for Detention Hearing held on 5/13/2021 before U.S. Magistrate Judge Andrew T. Baxter as to Joshua Stanley: Prior to the proceeding, counsel are provided with the Pretrial Services Report. On the Record: Defendant consents to proceeding by video due to the circumstances arising from the COVID–19 pandemic. Government proceeds by proffer and argues for detention. Defense counsel argues for the defendant's release on conditions. The court finds that the government has met their burden of proof and orders the defendant detained pending trial. A brief detention order will be issued, however, the parties should rely on the transcript of this proceeding for the supporting reasons for that decision. Defendant remanded to the custody of the U.S. Marshal. Appearances: Nicolas Commandeur, AUSA ; George Hildebrandt, Esq. for defendant; USPO: Janna Kulakowski. [Court Reporter: Eileen McDonough. Time: 1:49 PM – 2:16 PM](kmc) (Entered: 05/13/2021) |

A-5

| 05/13/2021 | 87 | ORDER OF DETENTION PENDING TRIAL as to Joshua Stanley. Signed by U.S. Magistrate Judge Andrew T. Baxter on 5/13/2021. (Attachments: # 1 Addendum to Pretrial Detention Order) (kmc) (Entered: 05/13/2021) |
| --- | --- | --- |
| 05/18/2021 | | SCHEDULING NOTICE as to Joshua Stanley: At the request of the government: Change of Plea Hearing set for 6/10/2021 10:30 AM in Syracuse before Senior Judge Frederick J. Scullin Jr.. (bjw, ) (Entered: 05/18/2021) |
| 06/10/2021 | | Minute Entry for proceedings held before Senior Judge Frederick J. Scullin, Jr:Change of Plea Hearing as to Joshua Stanley held on 6/10/2021,. Deft is sworn by Clerk, advised of rights and questioned by Court. Factual basis and maximum penalties stated. Plea agreement accepted. Plea entered by Joshua Stanley of Guilty on Count 1. Court orders PSR. Sentencing date 10/7/2021 10:00am. Deft remanded. APP: Nicolas Commandeur, AUSA; George Hildebrandt, Esq. (Court Reporter Jodi Hibbard) [10:30–10:55] (bjw, ) (Entered: 06/11/2021) |
| 06/10/2021 | 91 | PLEA AGREEMENT as to Joshua Stanley (bjw, ) (Entered: 06/11/2021) |
| 06/10/2021 | 92 | GUIDELINE ORDER as to Joshua Stanley Sentencing set for 10/7/2021 10:00 AM in Syracuse before Senior Judge Frederick J. Scullin Jr.. Government Sentencing Memo Deadline 9/16/2021 Defendant Sentencing Memo Deadline 9/16/2021. Signed by Senior Judge Frederick J. Scullin, Jr on 6/10/2021. (bjw, ) (Entered: 06/11/2021) |
| 07/12/2021 | 96 | STIPULATION by USA to 90 day continuance (Commandeur, Nicolas) (Entered: 07/12/2021) |
| 08/05/2021 | 98 | Letter from Tamara B. Thomson as to Joshua Stanley requesting that the purposed Preliminary Order of Forfeiture be signed and filed (Attachments: # 1 Proposed Order/Judgment)(Thomson, Tamara) (Entered: 08/05/2021) |
| 08/17/2021 | 99 | PRELIMINARY ORDER OF FORFEITURE FOR A MONEY JUDGMENT as to Joshua Stanley This order shall be made a part of the defendant's sentence and included in the judgment. The Court retains jurisdiction to enforce or amend this order.. Signed by Senior Judge Frederick J. Scullin, Jr on 8/13/2021.(Certified copies served upon USA) (bjw, ) (Entered: 08/17/2021) |
| 08/18/2021 | 100 | STATUS REPORT *notifying the Court that the Preliminary Order of Forfeiture is now final as to the defendant and no separate final order will be presented* by USA as to Joshua Stanley (Thomson, Tamara) (Entered: 08/18/2021) |
| 08/25/2021 | | RESCHEDULING NOTICE as to Joshua Stanley: At the request of the government: Sentencing reset for 1/10/2022 10:00 AM before Senior Judge Frederick J. Scullin Jr.. (bjw, ) (Entered: 08/25/2021) |
| 09/16/2021 | | TEXT Minute Entry for proceedings held before Magistrate Judge Therese Wiley Dancks on 9/16/2021:GRAND JURY makes a partial report and returns Superseding Indictment. Government makes special requests, including to seal the Superseding Indictment only as to newly added defendants. Court grants special requests. Tally Sheet is ordered sealed. (Court Reporter C. Darche) (sg) (Entered: 09/17/2021) |
| 09/16/2021 | 111 | Government Application to file redacted copy of Superseding Indictment sealed only as to defendants Sealed Defendant #13 and Sealed Defendant #14. (sg) (Entered: 09/17/2021) |
| 09/16/2021 | 112 | ORDER granting Government 111 application. The Clerk is directed to publicly file the redacted version of the Superseding Indictment, sealed only as to Sealed Defendant #13 (13) and Sealed Defendant #14 (14). Signed by Magistrate Judge Therese Wiley Dancks on 9/16/2021.(sg) (Entered: 09/17/2021) |
| 10/08/2021 | 139 | CRIMINAL PRETRIAL SCHEDULING ORDER as to Alejandro DeJesus Tavarez, Alexander Tavarez Espinal, Jan Leonel Vazquez Familia, Jahdier Dowdell, Maurice Graves, Kamiya Joe, Jonah Sutton, Dianisha Trapps, Tacarra Newton, Tywone Haskins, Joshua Stanley, Shateek Brown, Yoan Rodriguez, Treyquwan Rucker Motions to be filed by 11/3/2021. Jury Trial set for 12/6/2021 09:30 AM in Syracuse before Senior Judge Frederick J. Scullin Jr. Signed by Magistrate Judge Miroslav Lovric on 10/8/2021. (jdp ) (Entered: 10/08/2021) |

A-6

| 10/22/2021 | 143 | STIPULATION by USA to 90 Day Extension of Time (Commandeur, Nicolas) (Entered: 10/22/2021) |
|---|---|---|
| 12/10/2021 | | RESCHEDULING NOTICE as to Joshua Stanley: At the request of both counsel: Sentencing reset for 3/15/2022 10:00 AM in Syracuse before Senior Judge Frederick J. Scullin Jr.. (bjw, ) (Entered: 12/10/2021) |
| 01/13/2022 | | RESCHEDULING NOTICES as to Joshua Stanley: Due to a change in the Court's calendar: Sentencing reset to 5/23/2022 11:30 AM in Syracuse before Senior Judge Frederick J. Scullin Jr.. (bjw, ) (Entered: 01/13/2022) |
| 01/18/2022 | 184 | STIPULATION by USA to 70 Day Extension of Time (Commandeur, Nicolas) (Entered: 01/18/2022) |
| 03/09/2022 | 196 | NOTICE OF ATTORNEY APPEARANCE: Elizabeth A. Conger appearing for USA as substituted counsel for Attorney Tamara Thomson *for the forfeiture aspect of the case;* (Conger, Elizabeth) (Entered: 03/09/2022) |
| 04/05/2022 | 205 | PRESENTENCE INVESTIGATION REPORT – INITIAL DISCLOSURE [LODGED] as to Joshua Stanley. The Presentence Investigation Report in this matter is now available for review. Any objections to the report shall be served on the Probation Office within 14 days of this notice, by mailing a hard copy to the Probation Officer. Please contact the probation officer who prepared the report if you have any questions.**[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (baa, ) (Entered: 04/05/2022) |
| 04/29/2022 | | RESCHEDULING NOTICE as to Joshua Stanley – Due to a conflict with the Court's schedule, sentencing is reset for 7/18/2022 at 10:30 AM in Syracuse before Senior Judge Frederick J. Scullin Jr. Sentencing Memorandums are due by 6/27/2022. (rep) (Entered: 04/29/2022) |
| 06/24/2022 | 236 | SENTENCING MEMORANDUM by USA as to Joshua Stanley (Commandeur, Nicolas) (Entered: 06/24/2022) |
| 06/27/2022 | | TEXT NOTICE OF HEARING: Due to a conflict with the Court's calendar, sentencing as to Joshua Stanley is rescheduled for 8/10/2022 at 10:30 AM in Syracuse before Senior Judge Frederick J. Scullin Jr. The parties are to file their Sentencing Memorandums by 7/20/2022. (rep) (Entered: 06/27/2022) |
| 07/27/2022 | 263 | PRESENTENCE INVESTIGATION REPORT – FINAL DISCLOSURE [LODGED] as to Joshua Stanley. The final version of the Presentence Investigation Report, including all revisions and the most recent Addendum is now available for review. This version of the report will be used by the Court at the time of sentencing. **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. Any further distribution or dissemination is prohibited.]** (baa, ) (Entered: 07/27/2022) |
| 08/03/2022 | 273 | SENTENCING MEMORANDUM by Joshua Stanley (Hildebrandt, George) (Entered: 08/03/2022) |
| 08/05/2022 | 276 | Letter from Nicolas Commandeur as to Joshua Stanley requesting responding to Defendant Joshua Stanley's sentencing memorandum (Commandeur, Nicolas) (Entered: 08/05/2022) |
| 08/10/2022 | | TEXT Minute Entry for Sentencing held on August 10, 2022 before Senior Judge Frederick J. Scullin, Jr. for Joshua Stanley. Objections to PSR discussed by the parties. Defendant sentenced on Count 1 of the Indictment to a term of imprisonment of 30 months and a term of supervised release of 3 years with standard and special conditions to follow. Special Assessment: $100 ; fine waived. Defendant advised of appeal rights. Defendant remanded. APP: Adrian LaRochelle, AUSA; George Hildebrandt, Esq., attorney for Defendant; Jeff Loftus, Probation. CRD: Rose Pieklik (Court Reporter: Eileen McDonough) (Time: 10:30 a.m. to 10:48 a.m.) (rep) (Entered: 08/10/2022) |

A-7

| 08/18/2022 | 283 | JUDGMENT: As to Joshua Stanley – Defendant sentenced on Count 1 of the Indictment to 30 months imprisonment with a term of supervised release of 3 years to follow. Special Assessment: $100. Signed by Senior Judge Frederick J. Scullin, Jr on August 18, 2022. (rep) (Entered: 08/18/2022) |
|---|---|---|
| 08/18/2022 | 285 | STATEMENT OF REASONS [LODGED] as to Joshua Stanley **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (see) (Entered: 08/18/2022) |
| 08/21/2022 | 291 | NOTICE OF APPEAL by Joshua Stanley No fee paid. (Hildebrandt, George) (Entered: 08/21/2022) |
| 08/22/2022 | 294 | ELECTRONIC NOTICE AND CERTIFICATION as to Joshua Stanley sent to US Court of Appeals re 291 Notice of Appeal – Final Judgment (khr) (Entered: 08/22/2022) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:21-CR-_57_ (FJS) |
| | ) | |
| **v.** | ) | **Indictment** |
| | ) | |
| **ALEJANDRO DE JESUS TAVAREZ,** | ) | Violations:   21 U.S.C. § 846 |
| **ALEXANDER TAVAREZ ESPINAL,** | ) | [Conspiracy to Distribute and |
| **JAN LEONEL VAZQUEZ FAMILIA,** | ) | Possess with Intent to |
| **JAHDIER DOWDELL,** | ) | Distribute Controlled |
| **MAURICE GRAVES,** | ) | Substances] |
| **KAMIYA JOE, aka "K-JOE,"** | ) | |
| **JONAH SUTTON, aka "KUNSA,"** | ) | 21 U.S.C. § 841(a)(1) |
| **DIANISHA TRAPPS,** | ) | [Possession with Intent to |
| **aka "DUTCHESS,"** | ) | Distribute Controlled |
| **TACARRA NEWTON, aka "T-NEWT,"** | ) | Substances] |
| **"TUCOTT," "FLAME,"** | ) | |
| **TYWONE HASKINS, aka "Ty"** | ) | 21 U.S.C. § 841(a)(1) |
| **JOSHUA STANLEY, aka "40," and** | ) | [Distribution of Controlled |
| **SHATEEK BROWN, aka "TEEK,"** | ) | Substances] |
| **"STU,"** | ) | |
| | ) | 18 U.S.C. § 924(c)(1)(A)(i) |
| | ) | [Possession of Firearm in |
| | ) | Furtherance of a Drug |
| **Defendants.** | ) | Trafficking Crime] |
| | ) | |
| | ) | |
| | ) | 30 Counts and Forfeiture Allegations |
| | ) | |
| | ) | County of Offense:   Onondaga |

## THE GRAND JURY CHARGES:

### COUNT 1
**[Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances]**

From on or about February 1, 2020, through on or about November 18, 2020, in Onondaga

County in the Northern District of New York, and elsewhere, the defendants,

**ALEJANDRO DE JESUS TAVAREZ, aka "PAPI,"**
**ALEXANDER TAVAREZ ESPINAL,**
**JAN LEONEL VAZQUEZ FAMILIA,**
**JAHDIER DOWDELL,**
**MAURICE GRAVES,**

**KAMIYA JOE, aka, "K-JOE,"**
**JONAH SUTTON, aka "KUNSA,"**
**DIANISHA TRAPPS, aka "DUTCHESS,"**
**TACARRA NEWTON, aka "T-NEWT," "TUCOTT," "FLAME,"**
**TYWONE HASKINS, aka "TY,"**
**JOSHUA STANLEY, aka "40," and**
**SHATEEK BROWN, aka "TEEK," "STU,"**

conspired with each other and others to knowingly and intentionally distribute and possess with

intent to distribute one or more controlled substances, in violation of Title 21, United States Code,

Sections 841(a)(1) and 846.

As to defendants **ALEJANDRO DE JESUS TAVAREZ, ALEXANDER TAVAREZ**

**ESPINAL, and JAN LEONEL VAZQUEZ FAMILIA**, that violation involved 400 grams or

more of a mixture and substance containing a detectable amount of n-phenyl-n-[1-(2-phenylethyl)-

4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, and one kilogram or

more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled

substance, in violation of Title 21, United States Code, Section 841(b)(1)(A).

As to defendant **JAHDIER DOWDELL**, that violation involved 400 grams or more of a

mixture and substance containing a detectable amount of n-phenyl-n-[1-(2-phenylethyl)-4-

piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, in violation of Title 21,

United States Code, Section 841(b)(1)(A), and 100 grams or more of a mixture and substance

containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title

21, United States Code, Section 841(b)(1)(B).

As to defendants **MAURICE GRAVES, KAMIYA JOE, and JONAH SUTTON,** that

violation involved 40 grams or more of a mixture and substance containing a detectable amount

of n-phenyl-n-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled

substance, and 100 grams or more of a mixture and substance containing a detectable amount of

2

heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B).

As to defendant **DIANISHA TRAPPS, TACARRA NEWTON, and TYWONE HASKINS,** that violation involved 40 grams or more of a mixture and substance containing a detectable amount of n-phenyl-n-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B), and heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

As to defendant **JOSHUA STANLEY** and **SHATEEK BROWN,** that violation involved n-phenyl-n-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, and heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

**COUNT 2**
**[Possession with Intent to Distribute Controlled Substances]**

On or about November 3, 2020, in Onondaga County in the Northern District of New York, and elsewhere, the defendants,

**ALEJANDRO DE JESUS TAVAREZ, and**
**JAN LEONEL VAZQUEZ FAMILIA,**

knowingly and intentionally possessed with intent to distribute one or more controlled substances, in violation of Title 21, United States Code, Section 841(a)(1). As to defendants **ALEJANDRO DE JESUS TAVAREZ and JAN LEONEL VAZQUEZ FAMILIA,** that violation involved 400 grams or more of a mixture and substance containing a detectable amount of n-phenyl-n-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A), and 100 grams or more of a

3

mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B).

## COUNT 3
### [Possession with Intent to Distribute Controlled Substances]

On or about November 3, 2020, in Onondaga County in the Northern District of New York, and elsewhere, the defendant,

## ALEXANDER TAVAREZ ESPINAL,

knowingly and intentionally possessed with intent to distribute one or more controlled substances, in violation of Title 21, United States Code, Section 841(a)(1). That violation involved 40 grams or more of a mixture and substance containing a detectable amount of n-phenyl-n-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B), and heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

## COUNT 4
### [Possession with Intent to Distribute Controlled Substances]

On or about November 18, 2020, in Onondaga County in the Northern District of New York, and elsewhere, the defendant,

## JAHDIER DOWDELL,

knowingly and intentionally possessed with intent to distribute one or more controlled substances, in violation of Title 21, United States Code, Section 841(a)(1). That violation involved n-phenyl-n-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, and heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

4

## COUNT 5
### [Possession with Intent to Distribute Controlled Substances]

On or about November 18, 2020, in Onondaga County in the Northern District of New York, and elsewhere, the defendant,

### MAURICE GRAVES,

knowingly and intentionally possessed with intent to distribute one or more controlled substances, in violation of Title 21, United States Code, Section 841(a)(1). That violation involved 28 grams or more of a mixture and substance which contains cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B), and n-phenyl-n-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, and heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

## COUNT 6
### [Possession of a Firearm in Furtherance of a Drug Trafficking Crime]

On or about November 18, 2020, in Onondaga County in the Northern District of New York, the defendant,

### JAHDIER DOWDELL,

in furtherance of one or more drug trafficking crimes for which he may be prosecuted in a court in the United States, that is: conspiracy to distribute and possess with the intent to distribute one or more controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and possession with intent to distribute one or more controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowingly possessed a firearm, specifically a Glock Model 26, 9mm semi-automatic handgun with serial number WRV117, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

5

## COUNT 7
### [Possession of a Firearm in Furtherance of a Drug Trafficking Crime]

On or about October 27, 2020, in Onondaga County in the Northern District of New York, the defendant,

### MAURICE GRAVES,

in furtherance of one or more drug trafficking crimes for which he may be prosecuted in a court in the United States, that is: conspiracy to distribute and possess with the intent to distribute one or more controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and possession with intent to distribute one or more controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowingly possessed a firearm, specifically a Glock Model 23, .40 caliber semi-automatic handgun with serial number BAKA708, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNTS 8 through 16
### [Distribution and Possession with the Intent to Distribute a Controlled Substance]

On or about each of the dates listed below, in Onondaga County in the Northern District of New York, the defendant,

### SHATEEK BROWN,

knowingly and intentionally distributed and possessed with intent to distribute n-phenyl-n-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, and heroin, a Schedule I controlled substance:

| Count | Date |
|---|---|
| Eight | March 5, 2020 |
| Nine | March 9, 2020 |
| Ten | April 27, 2020 |
| Eleven | May 6, 2020 |
| Twelve | May 7, 2020 |
| Thirteen | May 14, 2020 |
| Fourteen | May 21, 2020 |

6

| Count | Date |
|-------|------|
| Fifteen | June 22, 2020 |
| Sixteen | June 23, 2020 |

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

### COUNTS 17 through 26
**[Distribution and Possession with the Intent to Distribute a Controlled Substance]**

On or about each of the dates listed below, in Onondaga County in the Northern District of

New York, the defendant,

### MAURICE GRAVES,

knowingly and intentionally distributed and possessed with intent to distribute n-phenyl-n-[1-(2-

phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, and

heroin, a Schedule I controlled substance:

| Count | Date |
|-------|------|
| Seventeen | February 18, 2020 |
| Eighteen | February 25, 2020 |
| Nineteen | March 3, 2020 |
| Twenty | March 25, 2020 |
| Twenty-One | April 1, 2020 |
| Twenty-Two | April 8, 2020 |
| Twenty-Three | April 30, 2020 |
| Twenty-Four | May 12, 2020 |
| Twenty-Five | June 29, 2020 |
| Twenty-Six | October 27, 2020 |

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

COUNTS 27 through 30
[Distribution and Possession with the Intent to Distribute a Controlled Substance]

On or about each of the dates listed below, in Onondaga County in the Northern District of

New York, the defendant,

**TYWONE HASKINS,**

knowingly and intentionally distributed and possessed with intent to distribute n-phenyl-n-[1-(2-

phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, and

heroin, a Schedule I controlled substance:

| Count | Date |
|-------|------|
| **Twenty-Seven** | July 30, 2020 |
| **Twenty-Eight** | August 4, 2020 |
| **Twenty-Nine** | October 1, 2020 |
| **Thirty** | October 7, 2020 |

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

**FIRST FORFEITURE ALLEGATION**

1.      The allegation contained in Count One of this indictment is hereby realleged and

incorporated by reference herein for the purpose of alleging forfeiture pursuant to Title 21, United

States Code, Section 853.

2.      Upon conviction of an offense in violation of Title 21, United States Code, Sections

841 and 846, as set forth in Count One, the defendants, **ALEJANDRO DE JESUS TAVAREZ,**

**aka "PAPI"; ALEXANDER TAVAREZ ESPINAL; JAN LEONEL VAZQUEZ FAMILIA;**

**JAHDIER DOWDELL; MAURICE GRAVES; KAMIYA JOE, aka, "K-JOE"; JONAH**

**SUTTON, aka "KUNSA"; DIANISHA TRAPPS, aka "DUTCHESS"; TACARRA**

**NEWTON, aka "T-NEWT" "TUCOTT" "FLAME"; TYWONE HASKINS; JOSHUA**

**STANLEY, aka "40"; and SHATEEK BROWN, aka "TEEK" "STU"**, shall forfeit to the

8

United States of America, any property constituting, and derived from, any proceeds obtained, directly and indirectly, as the result of such offense and any property used, and intended to be used, in any manner or part, to commit, and to facilitate the commission of the offense. The property to be forfeited includes, but is not limited to, the following:

    a.  A money judgment in the amount of not less than $309,110.00, representing the unrecovered proceeds personally obtained by defendant **ALEJANDRO DE JESUS TAVAREZ, aka "PAPI"**.

    b.  A money judgment in the amount of not less than $309,110.00, representing the unrecovered proceeds personally obtained by defendant **ALEXANDER TAVAREZ ESPINAL**.

    c.  A money judgment in the amount of not less than $309,110.00, representing the unrecovered proceeds personally obtained by defendant **JAN LEONEL VAZQUEZ FAMILIA**.

    d.  A money judgment in the amount of not less than $137,800, representing the unrecovered proceeds personally obtained by defendant **JAHDIER DOWDELL**.

    e.  A money judgment in the amount of not less than $47,840, representing the unrecovered proceeds personally obtained by defendant **MAURICE GRAVES**.

    f.  A money judgment in the amount of not less than $43,810, representing the unrecovered proceeds personally obtained by defendant **KAMIYA JOE, aka, "K-JOE"**.

    g.  A money judgment in the amount of not less than $25,350, representing the unrecovered proceeds personally obtained by defendant **JONAH SUTTON, aka "KUNSA"**.

h.  A money judgment in the amount of not less than $13,000 representing the unrecovered proceeds personally obtained by defendant **DIANISHA TRAPPS, aka "DUTCHESS"**.

i.  A money judgment in the amount of not less than $11,180, representing the unrecovered proceeds personally obtained by defendant **TACARRA NEWTON, aka "T-NEWT" "TUCOTT" "FLAME"**.

j.  A money judgment in the amount of not less than $12,610 representing the unrecovered proceeds personally obtained by defendant **TYWONE HASKINS**.

k.  A money judgment in the amount of not less than $4,550, representing the unrecovered proceeds personally obtained by defendant **JOSHUA STANLEY, aka "40"**.

l.  A money judgment in the amount of not less than $1,000, representing the unrecovered proceeds personally obtained by defendant **SHATEEK BROWN, aka "TEEK" "STU"**.

m.  $47,217.00 in United States currency seized on November 3, 2020.

n.  $29,064.96 in United States currency seized on November 3, 2020.

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendant (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of

substitute property pursuant to Title 21, United States Code, Section 853(p) and Title 28 United States Code, Section 2461(c).

### SECOND FORFEITURE ALLEGATION

3.      The allegation contained in Count Six of this indictment is hereby realleged and incorporated by reference herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d)(1) by Title 28, United States Code, Section 2461(c).

4.      Upon conviction of an offense in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), as set forth in Count Six of this indictment, the defendant, **JAHDIER DOWDELL,** shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), any firearms and ammunition involved in and used in any knowing violation of Title 18, United States Code, Section 924(c)(1)(A)(i). The property to be forfeited includes, but is not limited to:

    a.      Glock Model 26, 9mm semi-automatic handgun with serial number WRV117.

### THIRD FORFEITURE ALLEGATION

5. The allegation contained in Count Seven of this indictment is hereby realleged and incorporated by reference herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d)(1) by Title 28, United States Code, Section 2461(c).

6.      Upon conviction of an offense in violation of Title 18, United States Code, Section 924(c)(1)(A(i)), as set forth in Count Seven of this indictment, the defendant, **MAURICE GRAVES**, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), any firearms and ammunition involved in and used in any knowing violation of Title 18, United States Code, Section 924(c)(1)(A)(i). The property to be forfeited includes, but is not limited to:

11

a.    Glock Model 23, .40 caliber semi-automatic handgun with serial number
      BAKA708.

Dated:    February 18, 2021

                                            A TRUE BILL,   **NAME REDACTED



                                            Grand Jury Foreperson


      ANTOINETTE T. BACON
      Acting United States Attorney

By:

      Nicolas Commandeur
      Assistant United States Attorney
      Bar Roll No. 518984

A-20

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
UNITED STATES OF AMERICA

vs.                          5:21-CR-57

JOSHUA STANLEY,

                         Defendant.
-------------------------------------------x

    Transcript of a Change of Plea Hearing held on

June 10, 2021, at the James Hanley Federal Building,

100 South Clinton Street, Syracuse, New York, the

HONORABLE FREDERICK J. SCULLIN, JR., Senior Judge,

Presiding.


                A P P E A R A N C E S

For The Government: UNITED STATES ATTORNEY'S OFFICE
                    P.O. Box 7198
                    100 South Clinton Street
                    Syracuse, New York  13261-7198
                     BY:  NICOLAS COMMANDEUR, ESQ.

For Defendant:      GEORGE HILDEBRANDT, ESQ.
                    Attorney at Law
                    300 Crown Building
                    304 South Franklin Street
                    Syracuse, New York  13202

2

```
 1                  (Open Court, 10:45 a.m.)
 2          THE CLERK:  The case on for a change of plea is
 3   United States of America versus Joshua Stanley, case number
 4   is 21-CR-57, appearances for the record.
 5          MR. COMMANDEUR:  Nico Commandeur on behalf of the
 6   government, good morning, your Honor.
 7          THE COURT:  Good morning, Mr. Commandeur.
 8          MR. HILDEBRANDT:  Good morning, your Honor, George
 9   Hildebrandt for Mr. Stanley who's also in court.
10          THE COURT:  Mr. Hildebrandt, good morning, and
11   Mr. Stanley, good morning.
12          THE DEFENDANT:  Good morning.
13          THE COURT:  Mr. Stanley, as you are aware, this
14   matter has been scheduled for a plea today, change of plea.
15   Before I can accept a plea from you to the charges, I must be
16   certain that you're entering into a plea of your own free
17   will and that you understand the consequences of your plea
18   here today.  So at this time, I'll ask the clerk of the court
19   to place you under oath, and then I'll ask you some
20   questions.
21          THE CLERK:  Please raise your right hand.
22              (The defendant was sworn.)
23          THE COURT:  Mr. Stanley, would you state your full
24   name and your age, please.
25          THE DEFENDANT:  Joshua Stanley, 25 years old.
```

A-22

3

1          THE COURT:  All right.  Could you pull the

2     microphone right in front of you, there's two there so

3     Mr. Hildebrandt, you can get one, you can use the other one,

4     just pull it down there.  I'm sorry, 25 years old?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  And you are a United States

7     citizen, is that correct?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you have any addiction to any drugs?

10         THE DEFENDANT:  Yes.

11         THE COURT:  What is that?

12         THE DEFENDANT:  Heroin and opiates.

13         THE COURT:  Heroin and other opiates?

14         THE DEFENDANT:  Yes.

15         THE COURT:  All right.  Have you received any

16    treatment for that?

17         THE DEFENDANT:  No.

18         THE COURT:  How long have you been incarcerated

19    now?

20         THE DEFENDANT:  Four months.

21         THE COURT:  Have you taken any drugs in this four

22    months you've been in prison?

23         THE DEFENDANT:  No.

24         THE COURT:  And are there any other addictions or

25    medical issues you have besides that?

4

```
1            THE DEFENDANT:  I have PTSD and scoliosis.
2            THE COURT:  Scoliosis?
3            THE DEFENDANT:  Yes.
4            THE COURT:  And?
5            THE DEFENDANT:  PTSD.
6            THE COURT:  PTSD, all right.  I see you're wearing
7     a back brace now, is that from the scoliosis?
8            THE DEFENDANT:  No, I'm not wearing --
9            THE COURT:  Oh, I'm sorry, I saw your mask, it
10    looks like a neck brace.  So you have no other medical issues
11    other than that?
12           THE DEFENDANT:  No.
13           THE COURT:  All right.  It's my understanding you
14    have received a copy of the indictment against you and
15    reviewed that with your attorney, is that correct?
16           THE DEFENDANT:  Yes.
17           THE COURT:  Any questions about the charges against
18    you?
19           THE DEFENDANT:  No, your Honor.
20           THE COURT:  All right.  And are you satisfied with
21    the legal advice and representation you've received?
22           THE DEFENDANT:  Yes.
23           THE COURT:  All right.  Now, I have before me a
24    plea agreement.  Before I get to that let me ask you, you
25    understand you do have a right to continue in your plea of
```

5

1    not guilty, and if you did so you'd have a right to a trial

2    by jury, during which time the government would have to prove

3    you guilty beyond a reasonable doubt as to each and every

4    element of the crime charged against you.  You have the right

5    to challenge that evidence in the course of the trial, to

6    cross-examine their witnesses, also have a right to bring in

7    your own witnesses or testify on your own behalf if you chose

8    to do so, of course you'd have your attorney with you to

9    represent you during that proceeding.  But by pleading here

10   today, you'll waive all those rights associated with the

11   trial, there will be no trial; do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Of course the plea is the same as if

14   there were a trial and the jury were to find you guilty after

15   hearing all the evidence.  You understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Mr. Hildebrandt, could you put on the

18   record what you've done to review the charges against your

19   client with him and also your satisfaction that he

20   understands the consequences of his plea here today.  You may

21   remain seated if you wish.

22             MR. HILDEBRANDT:  Sure.  I'll stand up.

23             THE COURT:  All right.

24             MR. HILDEBRANDT:  I've met with Mr. Stanley on a

25   number of occasions, got to meet with him in jail, we

6

1    reviewed discovery, talked about the charges and possible

2    defenses, also speak with him frequently on the phone or

3    through his significant other who's also in court today.

4              THE COURT:  And you're satisfied --

5              MR. HILDEBRANDT:  Yes.

6              THE COURT:  -- he's aware of the consequences?

7              MR. HILDEBRANDT:  He understands what the charges

8    are and --

9              THE COURT:  And the consequences of the plea?

10             MR. HILDEBRANDT:  Yes.

11             THE COURT:  All right, thank you.  Well, as I

12   stated, there is a plea agreement here, I will not go through

13   the entire plea agreement.  Are you satisfied you understand

14   the plea agreement, you reviewed this with your attorney?

15             THE DEFENDANT:  Yes.

16             THE COURT:  You have any questions about it?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  All right.  It does call for you to

19   plead guilty to Count One of the indictment, 21-CR-057, that

20   charges you with conspiracy to distribute and possession with

21   intent to distribute one or more controlled substances

22   involving fentanyl and heroin.  It sets forth, page 1, that

23   as a result of your plea, first of all there is a special

24   assessment of $100; secondly, there is a forfeiture of

25   $4,550; and then there would be a term of imprisonment to be

7

1　　imposed and the maximum term of imprisonment to be imposed

2　　would be 20 years, that's the maximum; and there would be a

3　　fine, that fine would be up to $1 million; supervised release

4　　would follow any term of imprisonment, and that could be

5　　anywhere from three years to lifetime of supervised release.

6　　And there would be other adverse consequences as a result of

7　　the felony plea here, such as the right to vote, right to

8　　possess a firearm, you would forfeit those rights; you

9　　understand that?

10　　　　　　　THE DEFENDANT:  Yes.

11　　　　　　　THE COURT:  All right.  Then the plea agreement

12　　goes on to talk about the elements of the offense and the

13　　factual basis which I'll get to in a few minutes,

14　　Mr. Commandeur.  And page 6 of the plea agreement, it does

15　　set forth that you agree to waive any and all rights to

16　　appeal or to collaterally attack this conviction, and any

17　　sentence to a term of imprisonment of 46 months or less, is

18　　that correct?

19　　　　　　　THE DEFENDANT:  Yes.

20　　　　　　　THE COURT:  All right.  There are other

21　　stipulations set forth throughout the plea agreement;

22　　anything you wish to highlight here, Mr. Commandeur?

23　　　　　　　MR. COMMANDEUR:  Well, I understand we'll get to

24　　the factual basis.

25　　　　　　　THE COURT:  Yes, we're going to get to that.

8

1          MR. COMMANDEUR:  It also is set forth in the plea

2     agreement, as your Honor referenced, there are sentencing

3     stipulations with respect to the Guidelines although the

4     agreement also makes clear that ultimately it's the court's

5     decision about those Guidelines and the court is not bound by

6     the parties' stipulation in that regard.

7          THE COURT:  Right, and I'll get to that as well.

8     Mr. Hildebrandt, anything else you wish to highlight before

9     we take the plea?

10          MR. HILDEBRANDT:  No, your Honor.

11          THE COURT:  All right.  Well, first of all, with

12     respect to the Sentencing Guidelines I'm talking about,

13     Mr. Stanley, you understand that the sentencing is entirely

14     up to the court.  I know you discussed with your attorney the

15     Guidelines, how they may apply to you, is that correct?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  Well, the court has to

18     review that as well, I will hear arguments from you and from

19     your attorney as to what the Guidelines, what you believe the

20     Guidelines would be and how they apply to you.  I'll hear

21     from the government as well but it's ultimately up to the

22     court to decide what the Guidelines are as it applies to you,

23     and also whether or not to apply the Guidelines is

24     discretionary and the court may or may not decide to use

25     them.

9

1    In any event, I will consider various factors under

2    Section 3553(a), Title 18, such as the seriousness of the

3    conduct involved here, the need to afford adequate deterrence

4    of further criminal conduct, need to provide you with

5    appropriate education, vocational, or other treatment, and

6    other issues with respect to unwarranted sentence

7    disparities.  There's a number of things the court will

8    review and apply as I go through this history.

9    Now, you know that I will now direct the probation

10   department to prepare a presentence investigation report.

11   They'll talk to you about that, they'll talk to your

12   attorney, they'll talk to the government, they'll put

13   together a lot of information for the court about you, your

14   conduct, the conduct involved here, your background, and

15   other salient factors that have to do with sentencing.  It

16   will take some time, and it will be in depth and I will

17   review that thoroughly.  After I've done so, I'll hear again

18   from you, your attorney, and from the government before I can

19   make a decision as to what the appropriate sentence should

20   be.  So there's a bit of work that goes into that and

21   rightfully so.  But it will take some time.  But it is

22   entirely up to the court to make that decision at sentencing.

23   The only thing you can be assured of as you enter your plea

24   here today is that I will not sentence you to a term greater

25   than that allowed by the statute that we just went over with

A-29

10

1    you.  Any question about that process or proceedings?

2            THE DEFENDANT:  No, sir.

3            THE COURT:  Okay.  And of course, I'll mention this

4    again, but if there's been any representations made to you as

5    to what the sentence will be, the court is not bound by that.

6    Understand that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Okay.  All right.  As to the factual

9    basis for the plea, as set forth in the plea agreement in

10   some detail, and the elements which the government would

11   prove beyond a reasonable doubt if this went to trial,

12   Mr. Commandeur, would you take it from there?

13           MR. COMMANDEUR:  Thank you, your Honor.  Had the

14   case gone to trial, the government would have been prepared

15   to present admissible evidence to prove beyond a reasonable

16   doubt each of the elements of the offense, those elements

17   being, first, that two or more persons conspired to knowingly

18   or intentionally distribute or possess with intent to

19   distribute one or more controlled substances; second, that

20   the defendant joined the conspiracy either at its inception

21   or sometime during its existence, knowing the purpose of the

22   conspiracy and intending to help it succeed; and third, that

23   as to the defendant, the conspiracy involved the distribution

24   of or possession with intent to distribute fentanyl, a

25   schedule II controlled substance, and heroin, schedule I

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547

1    controlled substance.

2         The government would have proved at trial that

3    during September 2020 through October 2020, the defendant

4    repeatedly acquired bricks, in other words 50 individual-dose

5    bag quantities, of a mixture of fentanyl and heroin from

6    co-defendants Alejandro DeJesus Tavarez and Alexander Tavarez

7    Espinal, some of which the defendant redistributed to others

8    in the Syracuse, New York area.  For example, on

9    September 8th, 2020, defendant met with Alexander Tavarez

10   Espinal and obtained a quantity of the fentanyl/heroin

11   mixture.  On September 26, 2020, the defendant contacted

12   Alejandro DeJesus Tavarez by telephone to acquire 10 bricks,

13   in other words 500 individual bags of the fentanyl/heroin

14   mixture.  Using coded language, they agreed that the

15   defendant would pay for five bricks and Alejandro DeJesus

16   Tavarez would provide the other five bricks on consignment.

17   Later that day, Alexander Tavarez Espinal delivered the 10

18   bricks of fentanyl/heroin to the defendant.

19        On September 28th, 2020, the defendant contacted

20   Alejandro DeJesus Tavarez and, again using coded language,

21   agreed to acquire 10 bricks, i.e. 500 individual bags, of the

22   fentanyl/heroin mixture.  Alejandro DeJesus Tavarez delivered

23   the fentanyl/heroin to the defendant later that day.  The

24   defendant then provided the 10 bricks of fentanyl/heroin to

25   co-defendant Dianisha Trapps who redistributed the

12

1    fentanyl/heroin to customers in the Syracuse, New York area.

2              On October 25th, 2020, the defendant contacted

3    Alejandro DeJesus Tavarez by telephone to acquire 10 bricks,

4    i.e. 500 individual bags of the fentanyl/heroin mixture.

5    Using coded language, they agreed the defendant would pay for

6    five bricks and Alejandro DeJesus Tavarez would provide the

7    other five bricks on consignment.  Later that day, Alejandro

8    DeJesus Tavarez delivered the 10 bricks of fentanyl/heroin to

9    the defendant.  The defendant then redistributed some of the

10   fentanyl/heroin to others.

11             The defendant personally obtained $4,550 in

12   unrecovered proceeds in connection with his drug trafficking

13   activity.  That's what the government would have been

14   prepared to prove had the case gone to trial, your Honor.

15             THE COURT:  Thank you.  Mr. Stanley, the facts as

16   just recited by Mr. Commandeur, are they in essence correct?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Is there anything else you wish to put

19   in the record before I take the plea?  Mr. Hildebrandt?

20             MR. HILDEBRANDT:  No, Judge, other than to

21   emphasize, as set forth in the plea agreement, only a portion

22   of the heroin that Mr. Stanley acquired was for

23   redistribution, a portion was also for his own use to sustain

24   his habit.

25             THE COURT:  I'll have all that information before

13

1    sentencing, I understand.

2              MR. HILDEBRANDT:  Yes, thank you.

3              THE COURT:  Mr. Commandeur, anything else?

4              MR. COMMANDEUR:  No, your Honor.

5              THE COURT:  Well, Mr. Stanley, before I take your

6    plea, let me ask you, are you entering into this plea here

7    today because you are guilty and for no other reason?

8              THE DEFENDANT:  Yes.

9              THE COURT:  All right.  As to the charge against

10   you then, Indictment 21-CR-57 that charges, Count One, from

11   on or about February 1st, 2020, through on or about

12   November 18th, 2020, in Onondaga County in the Northern

13   District of New York and elsewhere, that you did, with

14   others, conspire with others as set forth in that indictment,

15   to knowingly and intentionally distribute and possess with

16   intent to distribute one or more controlled substances in

17   violation of Title 21, United States Code, Section 841(a)(1)

18   and 846, that violation involved fentanyl, which is a

19   Schedule II controlled substance, and heroin, schedule I

20   controlled substance, again, in violation of Title 21, United

21   States Code, Section 841(b)(1)(C).  How is it you plead to

22   this count then, guilty or not guilty?

23             THE DEFENDANT:  Guilty.

24             THE COURT:  It is the finding of this court that in

25   the case of the United States against Joshua Stanley, that

A-33

14

1    the defendant is competent and is capable of entering an

2    informed plea.  His plea is a knowing and voluntary plea,

3    supported by a basis in fact.  His plea is therefore accepted

4    and he is now adjudged guilty of that offense.

5            The sentencing will be set down for October 7th,

6    2021, at 10 a.m. in Syracuse, New York.  Anything further?

7            MR. HILDEBRANDT:  No, your Honor, thank you.

8            THE COURT:  All right.  Government?

9            MR. COMMANDEUR:  No, your Honor.

10           THE COURT:  All right.  Thank you.

11           THE CLERK:  Court is adjourned.

12               (Court Adjourned, 11:00 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4        I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

 5   Official Realtime Court Reporter, in and for the

 6   United States District Court for the Northern

 7   District of New York, DO HEREBY CERTIFY that

 8   pursuant to Section 753, Title 28, United States

 9   Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                       Dated this 14th day of October, 2022.

17

18

19                              /S/ JODI L. HIBBARD
                                _____
20                              JODI L. HIBBARD, RPR, CRR, CSR
                                Official U.S. Court Reporter
21

22

23

24

25
```

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:21-CR-057 (FJS) |
| | ) | |
| **v.** | ) | **Plea Agreement** |
| | ) | |
| **JOSHUA STANLEY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States
Attorney for the Northern District of New York, and defendant **JOSHUA STANLEY** (hereinafter
"the defendant"), by and through the defendant's counsel of record, hereby enter into the following
plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure:

1)     **The Defendant's Obligations:**

    a)   **Guilty Plea:** The defendant will change the defendant's previously-entered plea of "not
        guilty" and plead guilty to Count One of the indictment in Case No. 5:21-CR-057 (FJS)
        charging conspiracy to distribute and possess with intent to distribute one or more
        controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), which violation
        involved fentanyl, a Schedule II controlled substance, and heroin, a Schedule I controlled
        substance, in violation of 21 U.S.C. § 841(b)(1)(C).

    b)   **Special Assessment:** The defendant will pay an assessment of $100 per count of
        conviction pursuant to 18 U.S.C. § 3013. The defendant agrees to deliver a check or money
        order to the Clerk of the Court in the amount of $100, payable to the U.S. District Court,
        at the time of sentencing.

    c)   **Compliance with Other Terms of Agreement:** The defendant will comply in a timely
        manner with all of the terms of this plea agreement.

d) **Forfeiture:** Pursuant to 21 U.S.C. § 853 and 21 U.S.C. § 853(p), the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the indictment described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

(1) A money judgment in the amount of $4,550, representing the unrecovered proceeds personally obtained by the defendant.

(2) If any of the property described above, as a result of any act or omission of the defendant, either: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) and Fed. R. Crim. P. 32.2(e).

2) **The Government's Obligations:**

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the indictment in Case No 5:21-CR-057 (FJS) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement.  This agreement does not prevent the government from seeking charges based on other conduct.

b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3)   **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offense to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

a) **Maximum term of imprisonment:** 20 years, pursuant to 21 U.S.C. § 841(b)(1)(C).

b) **Maximum fine:** $1,000,000, pursuant to 21 U.S.C. § 841(b)(1)(C).

c) **Supervised release term:** In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between three (3) years and life, to begin after imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to two (2) years.

d) **Other adverse consequences:** Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

4)   **Elements of Offense:** The defendant understands that the following are the elements of the offense to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements.

a) Two or more persons conspired to knowingly or intentionally distribute or possess with intent to distribute one or more controlled substances (as described in Count One of the indictment);

b) The defendant joined the conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed; and

c) That as to the defendant, the conspiracy involved the distribution of or possession with intent to distribute n-phenyl-n-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance and heroin, a Schedule I controlled substance.

3

5)   **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offense to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to that offense:

a)   During September 2020 through October 2020, the defendant repeatedly acquired "bricks" (i.e., 50 individual-dose-bag quantities) of a mixture of fentanyl and heroin from co-defendants Alejandro De Jesus Tavarez and Alexander Tavarez Espinal, some of which the defendant re-distributed to others in the Syracuse, New York area.

b)   For example, on September 8, 2020, the defendant met with Alexander Tavarez Espinal and obtained a quantity of the fentanyl/heroin mixture.

c)   On September 26, 2020, the defendant contacted Alejandro De Jesus Tavarez by telephone to acquire 10 bricks (i.e. 500 individual bags) of the fentanyl/heroin mixture.  Using coded language, they agreed that the defendant would pay for five bricks and Alejandro De Jesus Tavarez would provide the other five bricks on consignment.  Later that day, Alexander Tavarez Espinal delivered the 10 bricks of fentanyl/heroin to the defendant.

d)   On September 28, 2020, the defendant contacted Alejandro De Jesus Tavarez and, again using coded language, agreed to acquire 10 bricks (i.e. 500 individual bags) of the fentanyl/heroin mixture.  Alejandro De Jesus Tavarez delivered the fentanyl/heroin to the defendant later that day.  The defendant then provided the 10 bricks of fentanyl/heroin to co-defendant Dianisha Trapps, who re-distributed the fentanyl/heroin to customers in the Syracuse, New York area.

e)   On October 25, 2020, the defendant contacted Alejandro De Jesus Tavarez by telephone to acquire 10 bricks (i.e. 500 individual bags) of the fentanyl/heroin mixture.  Using coded language, they agreed that the defendant would pay for five bricks and Alejandro De Jesus

4

Tavarez would provide the other five bricks on consignment. Later that day, Alejandro De Jesus Tavarez delivered the 10 bricks of fentanyl/heroin to the defendant. The defendant then re-distributed some of the fentanyl/heroin to others.

f) The defendant personally obtained $4,550 in unrecovered proceeds in connection with his drug trafficking activity.

6) <u>**Sentencing Stipulations:**</u>

a) The parties agree that the defendant is personally accountable for at least 24 grams but less than 32 grams of fentanyl, in that the defendant was personally involved with that quantity or it was reasonably foreseeable to the defendant that the conspiracy involved that quantity. This results in a base offense level of 20 pursuant to U.S.S.G. § 2D1.1(c)(10).

b) The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. §3C1.1.

c) The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. §3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to

enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 or more before receipt of any acceptance of responsibility adjustment under U.S.S.G. §3E1.1(a).

7) **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a) The conviction resulting from the defendant's guilty plea;

b) Any claim that the statute to which the defendant is pleading guilty is unconstitutional;

c) Any claim that the admitted conduct does not fall within the scope of the statute;

d) Any sentence to a term of imprisonment of 46 months or less;

e) Any sentence to a fine within the maximum permitted by law;

f) Any sentence to a term of supervised release within the maximum permitted by law;

g) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right.   Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination.  The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.  The Court is neither a party to, nor bound by this Plea Agreement.  The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office.  If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the

federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

    a. **Maximum terms of imprisonment:** The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement. If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

    b. **Mandatory minimum terms of imprisonment:** If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment. In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies. Such exception may be dependent on a motion by the government.

c.  **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

d.  **Sentencing guidelines:**

   i.  The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder.  While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

   ii.  Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court.  Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

   iii.  Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines.  If the presentence investigation reveals that the defendant's criminal history may support an offense level

different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution. If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement. To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the

Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g.  **Government's Discretion to Recommend a Sentence:**   Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

h.  **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8.  No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence.  The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report.  The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

i.  **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more

supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. If the defendant is a naturalized citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c.  A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable.  It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea.  The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G.  **Restitution:**  Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A.  In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664.  In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court.  The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense.  The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

a.   The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

b.   The defendant consents to the entry of an order of forfeiture of the assets described above.

c.   The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents.  The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.  The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d.   Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture.  Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.   In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets

transferred to any such third party.  The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets.  The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not

reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

I.   **Determination of Financial Condition and Payment of Interest and Penalties:**

   a.   In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

   b.   The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

   c.   The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

   d.   Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

J.   **Remedies for Breach:**

   a.   Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part.  In the event of such breach, the defendant will

remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b. If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

 i. To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement.  The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

 ii. In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

 iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

 iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

v.   To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

vi.  To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K.  **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant.  References to "the government" in this agreement refer only to that Office.  This agreement does not bind any other federal, state, or local prosecuting authorities.  Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L.  **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below.  No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

ANTOINETTE T. BACON
Acting United States Attorney

_____              5/18/21
Nicolas Commandeur                            Date
Assistant United States Attorney
Bar Roll No. 518984

_____              5/17/21
JOSHUA STANLEY                                Date
Defendant

_____
George Hildebrandt                            5/17/21
George Hildebrandt, Esq.                      Date
Attorney for Defendant
Bar Roll No.  505664

19

A-54

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:21-CR-057 (FJS) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JOSHUA STANLEY** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PRELIMINARY ORDER OF FORFEITURE FOR A MONEY JUDGMENT

WHEREAS, on June 10, 2021, Joshua Stanley ("the defendant") pled guilty to Count One

in Indictment 5:21-CR-057, for which the government sought forfeiture pursuant to 21 U.S.C.

§ 853 and 21 U.S.C. § 853(p);

WHEREAS, the defendant has consented in his oral plea to the entry of a forfeiture money

judgment in the amount of $4,550 (the "Forfeiture Money Judgment"), representing any property

real or personal, that constitutes or is derived directly or indirectly from gross proceeds traceable

to the commission of the offense;

IT IS NOW HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.      The defendant shall further forfeit to the United States the full value of a personal

Forfeiture Money Judgment in the amount of $4,550 to be entered against the defendant upon

sentencing.

2.      All payments made by the defendant toward the Forfeiture Money Judgment shall

be made by a money order, or a certified or official bank check, payable to the United States

Marshall Service with the criminal docket number noted on the face of the check.  The defendant

shall cause said check to be delivered by overnight mail to Assistant United States Attorney

Tamara B. Thomson, United States Attorney's Office, 100 South Clinton Street, Room 900, New York 13261.

3.      The United States alone shall hold title to any payment made by the defendant to satisfy the Forfeiture Money Judgment upon receipt of said payment.

4.      If payment of the Forfeiture Money Judgment is not received, the defendant shall forfeit any other property in which the defendant possesses an ownership interest up to the value of the outstanding balance, pursuant to 21 U.S.C. § 853(p), pertaining to the forfeiture of substitute property, the Federal Debt Collection Procedures Act, or any other applicable law.  The defendant shall fully assist the government in effectuating the payment of the Forfeiture Money Judgment. The defendant shall not file or interpose any claim or assist others to file or interpose any claim to any of the property against which the government seeks to execute the Forfeiture Money Judgment in any administrative or judicial proceeding.

5.      Upon entry of this Order, the United States Attorney General or his designee is authorized to conduct any proper discovery in accordance with Fed. R. Crim. P. 32.2(b)(3).

6.      The entry and payment of the Forfeiture Money Judgment shall not be considered the payment of the fine, penalty, restitution loss amount, or income taxes that may be due, and shall survive bankruptcy.

7.      Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A), this Order shall become final as to the defendant at the time of sentencing, or at any time prior to sentencing should the defendant consent.

8.      Pursuant to Fed. R. Crim. P. 32.2(b)(4)(B), this Order of Forfeiture shall be made part of the defendant's sentence and included in the judgment.

9.      This Order shall be binding upon the defendant and defendant's successors, administrators, heirs, assignees, and transferees, and shall survive the bankruptcy of any of them.

10.     The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Fed. R. Crim. P. 32.2(e).


Date:   __August 13, 2021__

_____
Hon. Frederick J. Scullin, Jr
Senior United States District Judge

A-57

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,                   Case No. 5:21-CR-057 (FJS)

        v.

JOSHUA STANLEY,                             GOVERNMENT'S SENTENCING
                                            MEMORANDUM
          Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting that the Court impose a sentence within the defendant's resulting Guidelines range.

# I

## INTRODUCTION

On June 10, 2021, the defendant Joshua Stanley pled guilty pursuant to a plea agreement to Count One of the Indictment in this case. Count One alleged that the defendant conspired with others to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) & 846; and that as to the defendant, that offense involved fentanyl and heroin, in violation of 21 U.S.C. §§ 841 (b)(1)(C). The defendant is scheduled to be sentenced on July 18, 2022, in Syracuse, New York.

# ]II

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

1) **Statutory Sentencing Provisions**

The government agrees with the recitation of the statutory maximum and minimum terms of incarceration, supervised release, and fines set forth in the PSR (Dkt. No. 205).

1

**2) Factual Description**

The government agrees with the recitation of the relevant factual information regarding the defendant's offense conduct as set forth in the PSR.

**3) Guidelines Provisions**

    **a. Plea Agreement**

The parties' plea agreement contains stipulations as to the drug weight attributable to the defendant. (PSR ¶ 10.)  The plea agreement also provides that the defendant waives his right to appeal or collaterally attack his conviction or any sentence of imprisonment of 46 months or less. (*Id.*)

    **b. Base Offense Level and Special Offense Characteristics**

The government believes that the PSR correctly calculates the guidelines in this case, both as to the offense level and the defendant's criminal history score.

    **c. Guidelines Range and Sentence**

The government agrees with the PSR's calculation of the guideline imprisonment range in this case.

**III**

**GOVERNMENT'S SENTENCING RECOMMENDATION**

The crime in this case was serious.  As part of his participation in the drug trafficking network charged in the indictment, the defendant regularly distributed fentanyl over several months in the city of Syracuse.  As this Court is aware, fentanyl is a toxic substance that has had a devastating impact on this community.  Making matters worse, the defendant possessed a handgun at the time of his criminal conduct.  (PSR ¶¶ 20-21.)  Such weapons possession drastically increases the already unacceptable risk posed by drug traffickers.

A-59

The defendant's criminal conduct prior to this offense is also troubling.  He has prior convictions relating to domestic violence (PSR ¶¶ 42, 43, & 44) including a violation of an order of protection.  He also has several other charges stemming from incidents of domestic violence that apparently were dismissed as part of plea dispositions.  (PSR ¶¶ 51-54)

For the foregoing reasons, a sentence within the resulting Guidelines range is sufficient, but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).[1]

Respectfully submitted this 24th day of June, 2022

CARLA B. FREEDMAN
United States Attorney

By:      /s/ Nicolas Commandeur
Nicolas Commandeur
Assistant United States Attorney
Bar Roll No. 518984

---

[1] The government reserves the right to respond to defense arguments raised for the first time after the filing of this memorandum.  Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond.  *See* Fed. R. Crim. P. 32(i)(1)(c), 32(h).  Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendation submitted by the United States Probation Office.

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

THE UNITED STATES OF AMERICA

vs.

Case No. 5:21-CR-0057 (FJS)

JOSHUA STANLEY,

Defendant.

-------------------------------------------------------------

DEFENDANT'S SENTENCING MEMORANDUM

The Defendant submits this memorandum for the Court's consideration at sentencing, currently scheduled for August 10, 2022 at 10:30 a.m.

DISCUSSION

Mr. Stanley pled guilty to conspiracy to distribute a controlled substance pursuant to a plea agreement (Dkt. No. 91).  His conviction involved a violation of 21 U.S.C § 841(b)(1)(C), and the Court's sentencing discretion is therefore not limited by a mandatory minimum.

The  Controlled Substances
Used and Distributed By Mr. Stanley

The controlled substances that Mr. Stanley sought to distribute (and use) were presumed to be heroin.  Lab reports with respect to various quantities obtained by law enforcement, however, reflect that in addition to heroin, the substances also contained fentanyl (in addition to other controlled and non-controlled substances).  The addition of fentanyl to the mixture, which obviously occurred well before the substances were in Mr. Stanley's possession, increases the guidelines' base offense level substantially above the level commensurate with the same quantity of heroin, the intended drug.

Moreover, Mr. Stanley only distributed a portion of the drugs he obtained,[1] using the profits to subsidize his use of the remaining quantity.

<u>Mr. Stanley's Background</u>

The presentence report (PSR pars. 64, 67) recounts the unfortunate conditions under which Joshua was raised, at least until moving in with his aunt at the age of 12.  He grew up without a father, and was raised in extreme poverty by an alcoholic single parent.  His home conditions were reported as "deplorable," with the home dirty and plagued by infestation.

Living in such conditions not only obviously affected him directly, but resulted in his being teased and abused by peers in school.  He reports that his mother rarely worked, and they were mostly dependent on government assistance to support him and his three siblings.

The household was marked not just by neglect, but by abuse.  Joshua reports that he frequently got "whoopings" from his mother, and her boyfriend disciplined him as a young child by making him take ice-cold showers for 20 to 30 minutes.  Those events still haunt him, as he questioned while describing them why his mother would allow them to happen, and became emotional while describing his home and school life.

Syracuse City School records obtained by the defense reflect the difficulties Joshua faced and the potential that was wasted.  Enrollment records reflect that his father lived in another state, and his address was listed as "unknown."  His kindergarten teacher commented that Joshua "loves books" and urged his parent each marking period to "please read to him [everyday]," a plea which fell on deaf ears.  Records note that of 179 school days that year, he was absent 46 (one-quarter of the time).  His second-grade teacher noted that Joshua "can be an excellent student," but reflecting the challenges he faced at home,  noted that "sometimes his moods prevent him from doing his best."  His fourth-grade

---

[1] *See* Dkt. No. 91, par. 5(a)(Providing that Mr. Stanley acquired bricks of heroin, "some of which [he] distributed to others in the Syracuse, New York area.")

teacher similarly described Joshua as a "bright boy" with "much to offer." Unfortunately, by sixth grade Joshua was failing and was required to attend summer school.  Of note, one of Josh's teachers had faith in his potential, noting that he had "made an effort to improve" and was "a pleasure to have in class."  Records from seventh grade, however, reflected that he did not attend class, and was therefore required to repeat the grade.  He left school at the end of the year, and then ran away from home to begin living with an aunt, who provided a supportive environment (*see* PSR par. 67).

It is of little surprise that Josh was diagnosed with PTSD and anxiety when he was only 10 years old (PSR par. 70).  He saw a counselor a couple times, but his mother stopped taking him.  Those issues, of course, have followed him into young adulthood.  Jail records obtained from the Onondaga County Justice Center reflect that he reported a history of anxiety and depression, and was suffering from panic attacks, lying awake in the middle of the night with cold sweats and heart palpitations.  The social worker noted that Josh reported having run away from home due to his mother beating him, and that he suffered from anxiety throughout the day.

With a history of abuse and no tools to cope or constructive avenues to address the effect, Josh unsurprisingly turned to self-medicating.  He reports using a substantial amount of the drugs he obtained, and reports that he sold the remainder to only a couple regular customers, and not indiscriminately on the street.

<u>Mr. Stanley's Prospects</u>
<u>On Release</u>

There is ample reason to believe, however, that during the 18 months he has been in custody, Josh has gained insight into his actions and an appreciation of the consequences that flow from engaging in illegal behavior. He presents as significantly more at peace with himself and his situation, accepting of his responsibility for his behavior and committed to leading a law-abiding life when released.  He has a young daughter and has been in a committed relationship with his daughter's

3

mother for four years.  He has prospects for employment, including as a result of his sister's position as the hiring manager at a restaurant.

SENTENCING GUIDELINES AND
PRESENTENCE REPORT OBJECTIONS

The Defendant submits the following with respect to the guidelines calculations in the presentence report.

1. <u>The Defendant Should Not Receive a 2-Level Enhancement for Having Maintained Premises for Purposes of Distributing a Controlled Substance</u>

The Defendant objects to the 2-point enhancement under 2D1.1(b)(12)(maintaining premises for purposes of manufacturing or distributing a controlled substance)(PSR par. 29). The commentary to the guidelines with respect to this provision provides that distributing the controlled substance "<u>must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises</u>."  The commentary goes on to provide that "[i]n making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes."

Mr. Stanley lived at the apartment with his girlfriend, their child and his girlfriend's child from another relationship. The pretrial services report provides that he had lived there for two years prior to his arrest. Accordingly, the premises was used almost exclusively as his legitimate residence, and only incidentally with respect to  his distribution of controlled substances. While there were several deliveries of drugs to Mr. Stanley from co-defendants while at his apartment, as noted elsewhere in this memorandum a significant portion of the drugs he obtained were for his own use. Mr. Stanley had a limited number of drug customers, and the defense is unaware of evidence that indicates he was distributing drugs from the apartment. Accordingly, the cases cited

4

in the presentence report addendum (PSR pp. 22-23) in response to the Defendant's objection are distinguishable.

2. <u>The Defendant Should Receive a 2-Level Reduction for Qualifying For the Safety Valve</u>

The Defendant should receive an additional two-point reduction for qualifying for the "safety valve" (*see* 18 USC § 3553(f)) pursuant to 2D1.1(b)(18). Although a gun was possessed in the apartment, it was not possessed "in connection with the offense." *Cf.* 18 USC § 3553(f)(2). There is no indication Mr. Stanley carried the gun to protect drugs or money during times he made sales (*see* USSG § 5C1.2 *comment.* (n.3))(providing that "offense" means offense of conviction <u>and relevant conduct</u>) and the amounts he possessed in his apartment were not so substantial that they would likely occasion a home invasion-type robbery to obtain drugs or proceeds. Of note, Mr. Stanley lived in an apartment complex that is the site of frequent instances of violence, and many Americans possess firearms in their homes (and beyond) for purposes of self-defense and unrelated to being engaged in illegal behavior.

3. <u>Final Guidelines Calculation</u>

The Defendant submits that the correct guidelines calculation is as follows:

| Level | USSG provision |
|-------|----------------|
| 20 | 2D1.1(c)(10) At least 24 grams but less than 32 grams of fentanyl |
| +2 | 2D1.1(b)(1) Possession of dangerous weapon |
| -2 | 2D1.1(b)(18) Qualifies for safety valve |
| -3 | 3E1.1(a),(b) Acceptance of responsibility |
| **17** | TOTAL OFFENSE LEVEL |
| | |
| **CH Category** | **Guideline Range at TOL 17** |
| CH II | **27-33 months** |

4.  <u>Guidelines-Related Factors That Warrant a Variance</u>

In addition to other factors noted in this memorandum, the Defendant submits that the Court should vary from the guideline range given that the Defendant believed he was distributing (and using) heroin, but the substance contained, and the guidelines calculation was thus based on, fentanyl.  Because Mr. Stanley is attributed with 24-32 grams of fentanyl, his base offense level is 20 (2D1.1(c)(10)). Had his guidelines calculation been based on heroin, however, his base offense level would have been 16 (20-40 grams of heroin)(2D1.1(c)(12)). While this is technically proper under the guidelines (*see* USSG § 2D1.1 Note A to Drug Quantity Table, which provides that "[i]f a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level."), the result is to assess a significantly higher guideline level to the conduct in which the Defendant believed he had engaged.

CONCLUSION

As of the August 10, 2022, the prospective date of sentencing, Mr. Stanley will have been imprisoned for 17.5 months. The Defendant respectfully submits that a sentence of 17 months (time-served) is an appropriate sentence given the considerations in  18 U.S.C § 3553(a), particularly Mr. Stanley's personal history, his demonstrated remorse and that his drug addiction was a motivating factor for his commission of the offense.  Such a sentence,  together with an appropriate period of supervised release, reflects the seriousness of the offense and provides appropriate punishment and adequate deterrence to Mr. Stanley and others.   His rehabilitative needs will be best met by programming in the community and supervision by the probation department.

Accordingly, Mr. Stanley respectfully requests that the Court sentence him to a period of 17 months' imprisonment (time-served), and a three-year term of supervised release.

Dated: August 3, 2022

Respectfully submitted,

George F. Hildebrandt, Esq.
Attorney for Defendant Joshua Stanley
Bar Roll Number 505664
220 S. Warren Street, 10th Floor
Syracuse, New York 13202
Tel: 315-434-5656

**A-67**



**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

---

*100 South Clinton Street, P.O. Box 7198*     *Tel.: (315) 448-0672*
*James M. Hanley Federal Building*     *Fax: (315) 448-0658*
*Syracuse, New York 13261-7198*

August 5, 2022

Hon. Frederick J. Scullin, Jr.
Senior U.S. District Judge
Federal Building and U.S. Courthouse
P.O. Box 7255
Syracuse, New York 13261-7255

      Re:    *United States v. Joshua Stanley*
                5:21-CR-057 (FJS)

Dear Judge Scullin:

On behalf of the government, I am writing in response to certain objections to the Presentence Investigative Report (PSR, Dkt. No. 263) raised by the defendant in his sentencing memorandum (Dkt. No. 273), which was filed after the government filed its memorandum (Dkt. No. 236) in this case. Sentencing is scheduled for Wednesday, August 10, 2022.

First, the government believes that the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for drug trafficking is appropriately applied in this case. As reflected in the PSR (¶¶ 17-19), and as the defendant concedes (Sent. Mem. at 4), he repeatedly received quantities of fentanyl and heroin at the residence. Wiretap interceptions confirm that each of these drug deliveries were for distribution-level quantities; specifically 10 "bricks" (500 individual-dose bags) each. PSR ¶¶ 17-19. Law enforcement also recovered from the defendant's residence and the basement of the residence a loaded semiautomatic 9-mm pistol, one brick (50 individual-dose bags) of the fentanyl/heroin mixture, and more than $10,000 in cash. As noted in the PSR (Addendum, page 22), the cash is presumably drug proceeds because Stanley lacked legitimate employment that would explain such a large amount of currency. Thus, the defendant repeatedly received large quantities of drugs at the residence, and maintained drugs and drug proceeds at the residence. The defendant asserts that there is no evidence that "he was distributing drugs from the apartment." Def. Sent. Mem. at 4. But regardless of whether he met his customers at the apartment, the evidence indicates that he received and maintained at this residence the drugs that he distributed. Under these circumstances, the drug activity cannot be described as merely "incidental" to his residence. *See United States v. Robtoy*, 848 Fed.Appx. 53, 54-55 (2d Cir. 2021) (holding that 2D1.1(b)(12) enhancement appropriate for apartment that "served doubly as Robtoy's residence and as a base for drug distribution" based on evidence of "quite a large quantity of drugs, the history of prior purposes from that location…"); *United States v. Sampel*, 860 Fed.Appx. 789, 792 (2d Cir. 2021) (holding that 2D1.1(b)(12) enhancement applied based on evidenced that defendant had drug packaging materials at his residence along with a large quantity

August 5, 2022
Page 2

of cash; and fact that he had "conducted at least two meetings at his home related to his drug business").

Second, the government believes that the Probation Office correctly declined to apply a two-level "safety-valve" reduction pursuant to U.S.S.G. § 2D1.1(b)(18).[1]  To qualify for this reduction, the Court must find, among other things, that "the defendant did not … possess a firearm or other dangerous weapon … in connection with the offense.." USSG § 5C1.2(a)(2).  "The burden is on the defendant to prove entitlement to safety-valve relief by a preponderance of the evidence." *United States v. Greenberg*, 773 Fed.Appx. 50, 52 (2d Cir. 2019).  In this case, the defendant admitted that the gun found at his residence was his.  PSR ¶ 21.  But the defendant contends that the gun was not "possessed in connection with the offense" because "the amounts he possessed in his apartment were not so substantial that they would likely occasion a home invasion-type robbery to obtain drugs or proceeds."  Def. Sent. Mem. at 5.  To the contrary, on the day of Stanley's arrest, officers recovered more than $10,000 in cash from the apartment; and the evidence from the wiretap interceptions reflects that he repeatedly obtained and stored large quantities of drugs at the residence.  Moreover, there is additional evidence that the defendant possessed a firearm when he had large quantities of cash.  For example, on May 3, 2020, the defendant apparently posted to his Snapchat account a photograph of himself holding a firearm with an extended magazine and a large quantity of cash.

Finally, this Court should not vary downward from the projected guidelines range – as Stanley invites the Court to do (Def. Sent. Mem. at 6) – based on Stanley's assertion that he believed he was distributing heroin, not fentanyl.  The law makes clear that a defendant should be held accountable for guidelines purposes for the quantity and type of drugs that he actually possessed and/or trafficked, not the quantity or type that he thought he possessed.  *See United States v. de Velasquez*, 28 F.3d 2, 6 (2d Cir. 1994) (rejecting defendant's argument that she should only be accountable for amount of heroin she thought she possessed, as opposed to amount she actually possessed); *United States v. Obi*, 947 F.2d 1031, 1032 (2d Cir. 1991) (rejecting defendant's argument that his guidelines should have been based on possession of cocaine (which he thought he possessed) rather than heroin (which he actually possessed)).  In this case, the defendant stipulated that his offense involved fentanyl.  *See* Plea Agmt. (Dkt. No. 91), ¶ 6(a).  That stipulated weight was conservative in the defendant's favor insofar as it was based purely on quantities that the defendant personally ordered on intercepted phone calls.  Moreover, even if it

---

[1]The defendant does not object to the two-level enhancement in the PSR (¶ 28) pursuant to USSG § 2D1.1(b)(1) for possession of a dangerous weapon.  Nor could he.  That applies "unless it is clearly improbable that the weapon was connected with the offense." *United States v. Smith*, 215 F.3d 237, 240 (2d Cir. 2000) ("our case law indicates that once the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct (i.e., the storage and cutting of drugs) relevant to the offense (i.e., distribution of drugs) at issue, the enhancement will apply unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense") (internal citation omitted); *see also Robtoy*, 848 Fed.Appx. at 54 (holding that 2D1.1(b)(1) enhancement applied based on finding knife in close proximity to drugs and drug-related materials").

A-69

August 5, 2022
Page 3

were true that Stanley believed he was acquiring and distributing heroin, it is certainly foreseeable that the heroin would be mixed with fentanyl.  Cutting heroin with fentanyl is, unfortunately, a common practice – one that often has devastating consequences.  In any event, the drugs that Stanley was distributing did, in fact, contain that toxic mixture of fentanyl, and it is appropriate that he be held accountable for it.

Respectfully submitted,

Carla B. Freedman
United States Attorney

*/s/ Nicolas Commandeur*
By:    Nicolas Commandeur
Assistant U.S. Attorney
Bar Roll No. 518984

cc:  George Hildebrandt, Esq.

A-70

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
UNITED STATES OF AMERICA

vs.                                    5:21-cr-57

JOSHUA STANLEY,

                    Defendant.
-------------------------------------------------x

**TRANSCRIPT OF SENTENCING**
**BEFORE THE HONORABLE FREDERICK J. SCULLIN, JR.**
August 10, 2022
100 S. Clinton Street, Syracuse, NY


                    APPEARANCES

For Government:

        OFFICE OF THE U.S. ATTORNEY
        Northern District of New York
        P.O. Box 7198
        100 South Clinton Street
        Syracuse, New York 13261
        BY:  ADRIAN LAROCHELLE, ESQ.
             Assistant U.S. Attorney

For Defendant:

        GEORGE F. HILDEBRANDT, ESQ.
        220 South Warren Street
        Syracuse, New York 13202


                *Eileen McDonough, RPR, CRR*
        *Official United States Court Reporter*
                *P.O. Box 7367*
            *Syracuse, New York 13261*
                *(315)234-8546*

USA v. Joshua Stanley - Sentencing                    2

1        (10:30 a.m.)

2        THE CLERK:  Sentencing in the case of United States

3    versus Joshua Stanley, case number 5:21-cr-057.  Counselors,

4    your appearance for the record, please.

5        MR. LAROCHELLE:  Good morning, your Honor.  Adrian

6    LaRochelle on behalf of Nico Commandeur for the United

7    States.

8        THE COURT:  Mr. LaRochelle.

9        MR. HILDEBRANDT:  George Hildebrandt for Joshua

10    Stanley, who is also present in court.

11        THE COURT:  Mr. Hildebrandt and Mr. Stanley.

12        Mr. Stanley, as you know, this matter is on for

13    sentencing today.  The Court has received and considered all

14    the pertinent information, including the Presentence

15    Investigation Report and its addendum, the plea agreement,

16    submissions by counsel.  Thank you, gentlemen, for your

17    submissions.  And I've also considered the sentencing

18    guidelines manual and the various factors as outlined in

19    Title 18, United States Code, Section 3553(a).

20        With respect to the Presentence Investigation

21    Report, I understand there are some objections to some of the

22    factual issues and statements and also with regard to the

23    calculations.

24        Do you wish to be heard further on that,

25    Mr. Hildebrandt?  I have your submissions and arguments on

USA v. Joshua Stanley - Sentencing                    3

1   that, as well as that of the government.

2        MR. HILDEBRANDT:  Just beyond what I wrote with

3   respect to the two-point enhancement for maintaining a

4   premises.  If you're selling drugs, a moderate amount that

5   Mr. Stanley admitted to doing, you have to keep your drugs

6   and your proceeds someplace.  The presence of the drugs and

7   the presence of the money is the asserted basis by the

8   government in the Presentence Report for the enhancement, but

9   that would apply virtually to anybody.

10        THE COURT:  You may be seated, if you wish, and

11   speak in the microphone, that way I can hear you.

12        MR. HILDEBRANDT:  If the mere presence of a modest

13   amount of drugs -- moderate amount of drugs and proceeds

14   within the premises, then virtually everybody who sold drugs

15   would get that enhancement.  That clearly wasn't the intent

16   of the sentencing commission.  The intent was to clearly

17   distinguish the situation beyond the guideline level for

18   selling drugs.  And I think it's clear that his keeping the

19   drugs and the money at his apartment were incidental to his

20   selling drugs.  It's clearly where he lived, he lived with

21   his children.

22        In fact, I went back and looked at the discovery.

23   Two occasions that I saw when drugs were dropped off there

24   were preceded by a text from Mr. Stanley to the supplier

25   indicating that he was at home because he was there watching

USA v. Joshua Stanley - Sentencing    4

1   his children, he couldn't leave.  And so I think the

2   two-point enhancement is inappropriate.

3        Also with respect to -- in addition, with respect

4   to the safety valve, I would distinguish having a firearm in

5   connection with the offense, which is the standard for the

6   safety valve, from the two-point enhancement that a person

7   gets under Section 2D1.1(b)(1) for possessing a firearm.  I

8   don't contest that enhancement.  The commentary indicates

9   that the person should get that enhancement if a firearm is

10   present.  But that's distinguished from the question under

11   the safety valve provisions which requires that the person

12   possess a firearm in connection with the offense.  And in

13   this case there is -- at best there is the mere presence of

14   the firearm on the premises.

15        THE COURT:  All right.  I'll address each one.  Do

16   you wish to respond to that?

17        MR. LAROCHELLE:  Your Honor, just briefly and just

18   mainly to clarify for the record.

19        There are really only three issues in dispute based

20   on the defendant's sentencing submissions.  The first is as

21   defense counsel has noted, the two-level enhancement for

22   maintaining a premise for drug trafficking.  The defendant is

23   arguing that enhancement should not apply.  The government in

24   our sentencing submissions argues that should apply because

25   obviously the drug activity as outlined in our sentencing

USA v. Joshua Stanley - Sentencing                    5

1   submissions was not merely incidental to the premises acting

2   as a residence, specifically because as outlined the

3   defendant was receiving large quantities of controlled

4   substances at that address.

5            The second issue to be resolved today is whether or

6   not the defendant is eligible for the two-point reduction for

7   being safety valve eligible.  The government has argued that

8   the defendant is not safety valve eligible primarily because

9   he possessed a firearm in connection with the offense.  I

10  won't get into the details of that, but I will note, as

11  outlined in the PSR and in the defendant's sentencing

12  submissions, that although not dispositive of this issue in

13  its entirety, the defendant does not object to the imposition

14  of the two-point enhancement for possession of a dangerous

15  weapon.

16           And then the third issue to be addressed today is

17  whether the Court should vary downward based on the

18  defendant's assertion that he believed he was distributing

19  heroin and not fentanyl.  The government argues the Court

20  should not vary downward for this reason, primarily because

21  what the defendant believed what he was distributing and what

22  he was actually distributing is irrelevant for guidelines

23  purposes.

24           THE COURT:  I don't think you're pursuing that

25  argument any further, are you, Mr. Hildebrandt?

USA v. Joshua Stanley - Sentencing                6

1    MR. HILDEBRANDT:  Not directly.

2    THE COURT:  Well, if you are, I've obviously seen

3  your papers, but I think the law is clear on that, that is

4  irrelevant as to what the defendant believed the drugs to be.

5  They clearly have been identified and established that they

6  were fentanyl and heroin.

7        As to the use of the premises for drug trafficking,

8  I think again you have case law in support of the

9  government's position on that.  It clearly establishes that

10 he has received large quantities of the drugs over a period

11 of time, ten bricks at a time according to the information.

12 In fact, the defendant admits he was using the premises on

13 numerous occasions for those drug transactions living there,

14 even though he might have had personal use as well, certainly

15 large quantities that were there for further distribution,

16 and I don't think that is really in dispute over that period

17 of time.

18       So the case law makes clear, it's not relevant

19 whether he uses the premises for other things, such as his

20 family living there, only that one of the purposes is to be

21 involved in the transactions involving drugs.  So I'm going

22 to deny your request in that regard as well.

23       And the last thing as far as the safety valve, it

24 doesn't in my view apply here.  Clearly he had possession of

25 weapons, he admits to, and as you point out, I don't think

USA v. Joshua Stanley - Sentencing    7

1   that's in dispute either.  The fact that he is distributing

2   drugs there and had weapons in his home, that's pretty clear

3   it's in connection with the offense insofar as he would have

4   to use it to protect what he has in the home.  I think the

5   facts as set forth in the Presentence Investigation Report

6   support that enhancement there.

7           So I'm going to deny your applications insofar as

8   those issues are concerned.  And I do find that otherwise the

9   facts and calculations set forth in the Presentence Report

10  are appropriate, and therefore I'll adopt them.

11          Having done so, do you wish to be heard further

12  before the Court imposes sentence?

13          MR. HILDEBRANDT:  Yes, your Honor.

14          I don't think it's difficult to trace Joshua

15  Stanley's being here to his difficult upbringing and

16  confluence of resulting emotional and mental health issues

17  that resulted in drug use that he employed in large part to

18  self medicate for those issues.  That doesn't excuse his

19  being here but it does provide some reason for compassion

20  that he didn't do what he did merely out of greed or

21  self-interest.

22          And it may be more importantly it provides reason

23  to believe that if he addresses those issues at this point in

24  his life, still is a very young man, that he is going to lead

25  a law-abiding life and not be back here.  In that regard I

*USA v. Joshua Stanley - Sentencing*      8

1   can tell you that in the 17 months I have been representing

2   Joshua Stanley, he has become a very different person. He is

3   much more self-reflective on his issues and what got him

4   here, more focused on getting out and leading a law-abiding

5   life, not just getting back on the street and resuming his

6   activities. There is a strong desire to be a productive

7   parent for his child who is present in court, something that

8   he himself didn't experience. And I think he has really

9   expressed his remorse by his actions since he has been

10   arrested and his desire to change his life-style.

11        He has been in prison, in jail, for 17 and a half

12   months, with credit for the time -- for good conduct that he

13   would receive for his sentence that he was sentenced to the

14   Bureau of Prisons and time spent in a halfway house. A

15   guideline sentence even under the guidelines calculation

16   warranted by the government I think would fairly result in a

17   sentence that would equate to time served, and I think there

18   is an accurate reason to vary downward from that guideline

19   range in any case. I don't think further incarceration is

20   going to serve a legitimate purpose.

21        And then Mr. Stanley in the community is best

22   served by focusing on his continued rehabilitation and

23   assuring that he leads a law-abiding life. And I think that

24   could be best accomplished by being in the community under

25   the supervision of the probation department under the

A-78

USA v. Joshua Stanley - Sentencing                 9

1   appropriate conditions.  So I would ask your Honor to give

2   him a sentence of time served and an appropriate period of

3   supervised release.

4          THE COURT:  All right.  The government?

5          MR. LAROCHELLE:  Your Honor, we'll rest on what's

6   outlined in our sentencing submissions.  I don't have

7   anything to add.

8          THE COURT:  Thank you.  Mr. Stanley, what do you

9   have to say for yourself?

10         THE DEFENDANT:  I wrote something.

11         THE COURT:  You may read it.

12         THE DEFENDANT:  It says, hi, your Honor.  I want to

13  start by apologizing to the Court and to my family for my

14  actions that got me in my situation.  I taken full

15  responsibility for what I've done and promise to never do it

16  again.  I have two kids that need their father in their life

17  physically and mentally.  Also I've been to numerous AA

18  meetings and proud to say I am 100 percent drug free and will

19  stay drug free.  I have beautiful things in my kids' life and

20  can't wait to be back with them to show them down, guide them

21  down the right path.  The last two years I've changed my

22  whole life around and I hope you give me a chance to prove it

23  not only to you and my family, but my kids, because they

24  matter the most in this situation and they need me the most

25  now more than ever.

USA v. Joshua Stanley - Sentencing                    11

1   writing now that you're going to follow through on it.

2            As to your family, your children, you're the father

3   but you haven't been much of a father while you're doing

4   drugs.  That's got to change entirely.  Not just using drugs,

5   getting involved with the people and the things you

6   associated with before, that's got to change entirely.  And

7   it's up to your family to support you in that regard.  There

8   has been some issues there too, so you've got to be mindful

9   of that.

10           With this background now, if he gets in trouble

11  again, he is going away for a long, long time.  So you're

12  going to have to walk the line there and really apply

13  yourself, get a job, work at it.  If you have problems, talk

14  to your probation officer because you will be under

15  supervision of this Court for a while, and while there,

16  you'll be monitored, and if you've got problems, you let

17  probation know, you work with them, but don't get back in the

18  same circle you've been in.

19           So upon your plea of guilty to Count One of the

20  indictment, it is the judgment of this Court that you are

21  hereby committed to the custody of the Bureau of Prisons for

22  a period of thirty months.  I recommend with the shorter

23  period of time you have left that you be allowed to

24  participate in substance abuse treatment programs or anything

25  else that may be helpful.  You will be released from prison

USA v. Joshua Stanley - Sentencing                    12

1   shortly.  When you're released you'll be placed on supervised

2   release for a period of three years.  The standard condition

3   will apply then and there are special conditions I am going

4   to impose.  Do you have a copy of the special conditions?

5          MR. HILDEBRANDT:  I don't but I did provide copies

6   of the Presentence Report and conditions to Mr. Stanley.

7          THE COURT:  He reviewed them with him, he is aware

8   of what they are then?

9          MR. HILDEBRANDT:  He has reviewed those.

10          THE COURT:  Do you waive the reading of those at

11  this time?

12          MR. HILDEBRANDT:  Yes.

13          THE COURT:  I'll adopt them and make them part of

14  the record then.  These special conditions are related to

15  your history and your background, obviously, and I believe

16  the Court finds they are necessary to promote your

17  rehabilitation.

18          Based upon your financial resources, I will not

19  impose any fines or costs and there is a special assessment

20  of $100, and there is a forfeiture outlined in the forfeiture

21  allegation, that is a money judgment of $4,550.

22          That constitutes the sentence of this Court.  You

23  do have a right to appeal this sentence.  Any appeal must be

24  filed within 14 days of the date judgment is entered in this

25  case.  You are remanded to the custody of the Marshal in

*USA v. Joshua Stanley - Sentencing*                    13

1   accordance with the terms of this sentence.

2           As I say, that constitutes the sentence of this

3   Court, which I deem to be fair and reasonable and not greater

4   than necessary.

5           It is up to you, you're going to be out shortly and

6   you'll have to take over the responsibility of being a father

7   and a productive citizen in this community.  All right.

8   Anything further?

9           MR. LAROCHELLE:  Nothing for the government, your

10  Honor.

11          MR. HILDEBRANDT:  No.

12          THE CLERK:  Court is adjourned.

13          (10:50 a.m.)

14                  *           *           *

15

16

17

18

19

20

21

22

23

24

25

*USA v. Joshua Stanley – Sentencing*                    14

1

2                    C E R T I F I C A T I O N

3

4        I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

5    Realtime Court Reporter, in and for the United States

6    District Court for the Northern District of New York,

7    do hereby certify that pursuant to Section 753, Title 28,

8    United States Code, that the foregoing is a true and correct

9    transcript of the stenographically reported proceedings held

10   in the above-entitled matter and that the transcript page

11   format is in conformance with the regulations of the

12   Judicial Conference of the United States.

13

14

15

16   _____

17        EILEEN MCDONOUGH, RPR, CRR
         Federal Official Court Reporter

18

19

20

21

22

23

24

25

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case    Case 5:21-cr-00057-FJS    Document 283    Filed 08/18/22    Page 1 of 7
Sheet 1

# UNITED STATES DISTRICT COURT

## Northern District of New York

UNITED STATES OF AMERICA

v.

Joshua Stanley
a/k/a "40"

**JUDGMENT IN A CRIMINAL CASE**

Case Number:     DNYN521CR000057-011

USM Number:     31417-509

George Hildebrandt
304 South Franklin Street
Syracuse, NY 13202
315-422-4742
Defendant's Attorney

## THE DEFENDANT:

☒  pleaded guilty to count(s)          1  of the Indictment on June 10, 2021.
☐  pleaded nolo contendere to count(s)  which was accepted by the court.
☐  was found guilty on count(s) of the  on  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. §§  846 and 841(b)(1)(C) | Conspiracy to Possess With Intent to Distribute and to Distribute Fentanyl and Heroin | 10/25/2020 | 1 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment.  The sentence is imposed in accordance with 18 U.S.C. § 3553 and the Sentencing Guidelines.

☐  The defendant has been found not guilty on count(s)
☐  Count(s)    ☐ is    ☐ are   dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 10, 2022
Date of Imposition of Judgment

Frederick J. Scullin, Jr.
Senior United States District Judge

August 18, 2022
Date

JTL

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
Sheet 2 – Imprisonment

Judgment – Page **2** of **7**

DEFENDANT:      Joshua Stanley
CASE NUMBER:   DNYN521CR000057-011

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
**30 months**

☒  The court makes the following recommendations to the Bureau of Prisons:

The Court recommends the defendant participate in substance abuse treatment while incarcerated with the Bureau of Prisons.

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

☐  at    ☐ a.m.  ☐ p.m. on.

☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐  before 2 p.m. on.

☐  as notified by the United States Marshal.

☐  as notified by the Probation or Pretrial Services Office.

## RETURN

**I have executed this judgment as follows:**

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

_____
BY DEPUTY UNITED STATES MARSHAL

Judgment – Page **3** of 7

DEFENDANT:  Joshua Stanley
CASE NUMBER:  DNYN521CR000057-011

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:
**3 years**

## MANDATORY CONDITIONS

1.  You must not commit another federal, state, or local crime.

2.  You must not unlawfully possess a controlled substance.

3.  You must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

4.  ☐ You must make restitution in accordance with 18 U.S.C. § § 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5.  ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(deselect if inapplicable)*

6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that you pay in accordance with the Schedule of Payments sheet of this judgment.

You must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
Sheet 3A – Supervised Release

Judgment – Page **4** of **7**

DEFENDANT:      Joshua Stanley
CASE NUMBER:   DNYN521CR000057-011

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.  You must answer truthfully the questions asked by your probation officer.

5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the court determines in consultation with your probation officer that, based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk of committing further crimes against another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

14. You must provide the probation officer with access to any requested financial information.

15. You must submit your person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by you.  Any items seized may be removed to the Probation Office or to the office of their designee for a more thorough examination.

A-87

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
Sheet 3D – Supervised Release

Judgment – Page **5** of **7**

DEFENDANT:      Joshua Stanley
CASE NUMBER:   DNYN521CR000057-011

## SPECIAL CONDITIONS OF SUPERVISION

1.  You must not associate with any member, associate, or prospect of the Uptown gang, or any other criminal gang, club, or organization.

2.  You must participate in a mental health program, to include domestic violence programming, which may include medical, psychological, or psychiatric evaluation and outpatient treatment as recommended by the treatment provider based upon your risk and needs. You may also be required to participate in inpatient treatment upon recommendation of the treatment provider and upon approval of the Court. The probation office must approve the location, frequency, and duration of outpatient treatment. You must abide by the rules of the program which may include a medication regimen. You must contribute to the cost of any evaluation and/or treatment in an amount to be determined by the probation officer based on your ability to pay and the availability of third party payments.

3.  You must participate in a program for substance abuse which will include testing for use of controlled substances, controlled substance analogues, and alcohol. This may include outpatient treatment as recommended by the treatment provider based upon your risk and needs. You may also be required to participate in inpatient treatment upon recommendation of the treatment provider and upon approval of the Court. The probation office must approve the location, frequency, and duration of outpatient treatment. You must abide by the rules of any treatment program which may include abstaining from the use of any alcohol. You must contribute to the cost of any evaluation and/or treatment in an amount to be determined by the probation officer based on your ability to pay and the availability of third party payments.

## DEFENDANT'S ACKNOWLEDGMENT OF APPLICABLE CONDITIONS OF SUPERVISION

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

The conditions of supervision have been read to me.  I fully understand the conditions and have been provided a copy of them.  For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

_____          _____
Defendant                                 Date


_____          _____
U.S. Probation Officer/Designated Witness     Date

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
       Sheet 5 – Criminal Monetary Penalties

Judgment – Page **6** of 7

DEFENDANT:     Joshua Stanley
CASE NUMBER:  DNYN521CR000057-011

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **JVTA Assessment*** | **AVAA Assessment**** | **Fine** | **Restitution** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100 | N/A | N/A | Waived | N/A |

☐   The determination of restitution is deferred until.  An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

     If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | $ | $ | |
| **Totals** | $ | $ | |

☐   Restitution amount ordered pursuant to plea agreement   $

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐  the interest requirement is waived for the    ☐ fine  ☐ restitution.

     ☐  the interest requirement for the    ☐ fine   ☐ restitution is modified as follows:

*Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
**Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
***Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
      Sheet 6 – Schedule of Payments

Judgment – Page **7** of **7**

DEFENDANT:      Joshua Stanley
CASE NUMBER:   DNYN521CR000057-011

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☒  In full immediately; or

B  ☐  Lump sum payment of $  due immediately; balance due

       ☐  not later than, or

       ☐  in accordance with  ☐ D,  ☐ E,  ☐ F,  or  ☐ G below; or

C  ☐  Payment to begin immediately (may be combined with  ☐ D,  ☐ E, or  ☐ G below); or

D  ☐  Payment in equal  installments of $  over a period of, to commence  after the date of this  judgment; or

E  ☐  Payment in equal  installments of $  over a period of, to commence  after release from      imprisonment to a term of supervision; or

F  ☐  Payment during the term of supervised release will commence within  after release from imprisonment. The court    will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

G  ☐  Special instructions regarding the payment of criminal monetary penalties:


Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to **Clerk, U.S. District Court, Federal Bldg., 100 S. Clinton Street, P.O. Box 7367, Syracuse, N.Y. 13261-7367,** or to pay electronically, visit www.nynd.uscourts.gov for instructions, unless otherwise directed by the court, the probation officer, or the United States attorney.  If a victim cannot be located, the restitution paid to the Clerk of the Court for that victim shall be sent to the Treasury, to be retrieved when the victim is located.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    ☐  Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.


    ☐  The Court gives notice that this case involves other defendants who may be held jointly and severally liable for payment of all or part of the restitution ordered herein and may order such payment in the future.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
    The items outlined in the forfeiture allegation, including a money judgment in the amount of $4,550.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA Assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

Criminal Notice of Appeal - Form A

# NOTICE OF APPEAL

## United States District Court

__Northern_____   District of __New York_____

Caption:

__United States of America__ v.

__Joshua Stanley_____

Docket No.: 5:21-CR-57
_____
Hon. Frederick J. Scullin, Jr.
_____
(District Court Judge)

Notice is hereby given that __the Defendant, Joshua Stanley_____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment ✔___, other |___ _____

entered in this action on __8/18/22._____                                    (specify)

(date)

This appeal concerns: Conviction only |____   Sentence only |___|   Conviction & Sentence |____   Other |___

Defendant found guilty by plea ✔ | trial |   | N/A |   .

Offense occurred after November 1, 1987?  Yes | ✔   No |___   N/A |___

Date of sentence: __8/10/22_____   N/A |___|

Bail/Jail Disposition: Committed |✔   Not committed |   | N/A |

Appellant is represented by counsel? Yes ✔ | No |   If yes, provide the following information:

Defendant's Counsel: __George F. Hildebrandt, Esq._____

Counsel's Address: __220 S. Warren St., 10th Floor_____

__Syracuse, NY 13202_____

Counsel's Phone: __315-434-5656_____

Assistant U.S. Attorney: _____

AUSA's Address: _____

_____

AUSA's Phone: _____

*George F. Hildebrandt*
_____
Signature

STATE OF NEW YORK    )              **AFFIDAVIT OF SERVICE**
                           )    ss.:   **BY OVERNIGHT EXPRESS**
COUNTY OF NEW YORK  )              **MAIL**

       I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

       **On January 18, 2023**

deponent served the within: **Appendix**

       **upon:**

Joshua Stanley
*Defendant-Appellant*
Syracuse Pavilion Residential Reentry Center
701 Erie Boulevard East
Register No. 31417-509
Syracuse, New York 13210

the address(es) designated by said attorney(s) for that purpose by depositing  **1**  true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on January 18, 2023**

**MARIANA BRAYLOVSKIY**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026       **Job# 317819**