# 22-1829-cr(L), 22-2076-cr(CON)

## United States Court of Appeals

*for the*

## Second Circuit

———————————◆———————————

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

ALEJANDRO DeJESUS TAVAREZ, ALEXANDER TAVAREZ ESPINAL, JAN LEONEL VAZQUEZ FAMILIA, AKA Jan Vazquez, JAHDIER DOWDELL, MAURICE GRAVES, KAMIYA JOE, AKA K-Joe, JONAH SUTTON, Sealed Defendant #7, DIANISHA TRAPPS, AKA Dutchess, TACARRA NEWTON, AKA Sealed Defendant #9, AKA TNewt, AKA Tucott, AKA Flame, TYWONE HASKINS, YOAN RODRIGUEZ, AKA Sealed Defendant #13, TREYQUWAN RUCKER, AKA Sealed Defendant #14, SHATEEK BROWN, AKA Teek, AKA Stu,

*Defendants,*

JOSHUA STANLEY, AKA 40,

*Defendant-Appellant.*

———————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT
### Pursuant to *Anders v. California*, 386 U.S. 738 (1967)

LUCAS ANDERSON
*Of Counsel*
ROTHMAN, SCHNEIDER, SOLOWAY
& STERN, LLP
*Attorneys for Defendant-Appellant*
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-5500

# **Table of Contents**

Table of Authorities ........................................................................ iii

Preliminary Statement .......................................................................1

Issues Presented ...............................................................................2

Statement of Jurisdiction...................................................................2

Statement of the Case........................................................................2

   I.     The Indictment and the Plea Agreement.......................................2

   II.    The Plea Proceeding.................................................................3

   III.   The Presentence Investigation Report and the Defense Objections ...........6

      A. The Initial PSR Disclosure ......................................................6

      B. Stanley's Argument for a 2-Level "Safety Valve" Downward Departure.7

      C. Stanley's Objection to the "Maintaining a Premises" Enhancement ........8

   IV.  The Sentencing Proceeding and the District Court's Rulings on Disputed Issues Relating to the Guidelines Calculation ...............................................10

      A. The Defense's Request for a "Safety Valve" Departure .........................10

      B. The "Maintaining a Premises" Enhancement...........................................11

      C. The Sentence Imposed...............................................................11

   V.    Appellate Proceedings.................................................................12

Summary of the Argument..................................................................13

Argument........................................................................................14

   I.     There are no meritorious grounds for an appeal of Stanley's conviction...14

      A.  There is no indication that the district court's failure to comply with Rule 11(b) affected Stanley's decision to plead guilty. ..........................15

      B.  The appeal waiver in Stanley's plea agreement precludes an appellate challenge to his conviction.....................................................19

      C.  An appeal of Stanley's conviction would give rise to an unacceptable risk of adverse consequences. ...............................................20

i

II.  Stanley waived his right to appeal his sentence. ......................................... 20

   A.  There are viable grounds to argue that the district court committed two procedural errors at sentencing................................................................ 21

   B.  The district court's errors notwithstanding, Stanley waived his right to appeal his sentence. .................................................................................. 24

Conclusion ......................................................................................................... 25

Certificate of Compliance .................................................................................. 26

## **Table of Authorities**

### **Cases**

**Page**

*Anders v. California*,
    386 U.S. 738 (1967) ............................................................... 12, 14

*United States v. 777 Greene Avenue*,
    609 F.3d 94 (2d Cir. 2010) ........................................................ 14

*United States v. Andrades*,
    169 F.3d 131 (2d Cir. 1999) ........................................... 16, 17, 18

*United States v. Bonilla*,
    618 F.3d 102 (2d Cir. 2010) ...................................................... 20

*United States v. Cavera*,
    550 F.3d 180 (2d Cir. 2008) ................................................. 20-21

*United States v. Dominguez Benitez*,
    542 U.S. 74 (2004) .................................................................... 16

*United States v. Gomez-Perez*,
    215 F.3d 315 (2d Cir. 2000) ................................................ 19, 24

*United States v. Ibrahim*,
    62 F.3d 72 (2d Cir. 1995) .................................................... 14, 20

*United States v. Lloyd*,
    901 F.3d 111 (2d Cir. 2018) ...................................................... 16

*United States v. Renaud*,
    999 F.2d 622 (2d Cir. 1993) ................................................ 16, 20

*United States v. Rigas*,
    490 F.3d 208 (2d Cir. 2007) ...................................................... 21

iii

## <u>Table of Authorities, Cont'd</u>

**<u>Page</u>**

*United States v. Riggi*,
    649 F.3d 143 (2d Cir. 2011) ........................................................ 24

*United States v. Rivera*,
    971 F.2d 876 (2d Cir. 1992) ........................................................ 24

*United States v. Robtoy*,
    848 Fed. App'x 53 (2d Cir. May 24, 2021) ............................. 9, 23

*United States v. Sampel*,
    860 Fed. App'x 789 (2d Cir. July 6, 2021) ............................. 9, 23

*United States v. Smith*,
    949 F.3d 60 (2d Cir. 2020) ........................................................ 21

### **Statutes, Rules, and Sentencing Guidelines Provisions**

18 U.S.C. § 3013 ................................................................................ 17

18 U.S.C. § 3553(a) ...................................................................... 5, 10

18 U.S.C. § 3553(f) ............................................................................. 7

21 U.S.C. § 841(b)(1)(C) ........................................................ 1, 2, 3, 17

21 U.S.C. § 846 .................................................................................. 1

21 U.S.C. § 853 ................................................................................ 17

28 U.S.C. § 1291 ................................................................................ 2

Rule 11(b), Fed. R. Crim. P. ....................................... 3, 5, 13, 15, 16

Rule 11(h), Fed. R. Crim. P. ............................................................ 16

Rule 4(b), Fed. R. App. P. .................................................................. 2

iv

<u>**Table of Authorities, Cont'd**</u>

<u>**Page**</u>

Rule 32(a), Fed. R. App. P. ................................................................. 26

U.S.S.G. § 2D1.1 cmt. 17 ................................................................. 23

U.S.S.G. § 2D1.1(b)(1) ................................................................. 7

U.S.S.G. § 2D1.1(b)(12) ................................................................. *passim*

U.S.S.G. § 2D1.1(b)(18) ................................................................. 7

U.S.S.G. § 2D1.1(c)(10) ................................................................. 3

U.S.S.G. § 3E1.1(a) ................................................................. 3

U.S.S.G. § 3E1.1(b) ................................................................. 3

U.S.S.G. § 5C1.2 ................................................................. 7

## **Preliminary Statement**

Criminal Justice Act counsel for defendant-appellant Joshua Stanley submits this brief in connection with Stanley's appeal from the August 18, 2022 judgment imposed by the Hon. Frederick J. Scullin, Jr. of the United States District Court for the Northern District of New York. On June 10, 2021, Stanley pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to distribute and possess with the intent to distribute narcotics, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Among other things, the plea agreement provided that Stanley would waive his right to appeal or collaterally attack "[t]he conviction resulting from [his] guilty plea" and/or "[a]ny sentence to a term of imprisonment of 46 months or less." A.40.

On August 10, 2022, the district court imposed a sentence of 30 months' imprisonment, three years of supervised release, a special assessment of $100, and forfeiture in the amount of $4,550. A.79-80. Stanley is currently serving the final portion of his custodial sentence at a Residential Reentry Center in Syracuse, New York.

1

**Issues Presented**

Whether there are any viable issues for an appeal of Stanley's conviction or sentence; whether Stanley waived his right to appeal his conviction or sentence; and whether a successful appeal of Stanley's conviction could give rise to an unacceptable risk of adverse consequences.

**Statement of Jurisdiction**

The judgment of conviction and sentence was entered on August 18, 2022. A.83. Stanley filed a timely notice of appeal on August 21, 2022. A.90. Therefore, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and Rule 4(b) of the Federal Rules of Appellate Procedure.

**Statement of the Case**

**I.      The Indictment and the Plea Agreement**

On February 18, 2021, the government filed an indictment in the Northern District of New York charging twelve separate defendants with an assortment of drug-related crimes. A.8-19. Under Count One, Stanley and his eleven co-defendants were charged with conspiracy to distribute and possess with the intent to distribute controlled substances; Stanley was specifically charged with conduct involving fentanyl and heroin, in violation of 21 U.S.C. § 841(b)(1)(C). A.8-10.

Through a plea agreement executed on May 17, 2021, the parties agreed that Stanley was subject to a Sentencing Guidelines base offense level of 20, pursuant

2

to U.S.S.G. § 2D1.1(c)(10), a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a), and a further one-level reduction for timely notice of intent to plead guilty, pursuant to § 3E1.1(b). A.39. The plea agreement did not preclude either party from seeking additional Guidelines departures or a variance from the calculated Guidelines range at the time of sentencing. However, the plea agreement did expressly provide that Stanley would waive his right to appeal or collaterally attack, among other things: (1) "[t]he conviction resulting from [his] guilty plea"; and (2) "[a]ny sentence to a term of imprisonment of 46 months or less." A.40.

## II.    The Plea Proceeding

On June 10, 2021, Stanley pleaded guilty to the § 841(b)(1)(C) offense charged in the indictment. A.32. At the outset of the plea proceeding, Judge Scullin personally addressed Stanley and placed him under oath. A.21. However, Judge Scullin did not ask any questions to ensure that Stanley understood "the government's right, in a prosecution for perjury or false statement, to use against [him] any statement that [he] gives under oath." Rule 11(b)(1)(A), Fed. R. Crim. P.

In response to Judge Scullin's questioning, Stanley affirmed that he had reviewed the indictment with his attorney and that he was satisfied with his legal counsel. Tr.4. Judge Scullin also confirmed that Stanley understood that

> you do have a right to continue in your plea of not guilty, and if you did so you'd have a right to a trial by jury, during which time the government would have to prove you guilty beyond a reasonable

3

doubt as to each and every element of the crime charged against you.
You have the right to challenge that evidence in the course of the trial,
to cross-examine their witnesses, also to have a right to bring in your
own witnesses or testify on your own behalf if you chose to do so, of
course you'd have your attorney with you to represent you during that
proceeding. But by pleading here today, you'll waive all those rights
associated with the trial, there will be no trial; do you understand that?

A.23-24. In response to this extensive compound inquiry, which did not include

any mention of the constitutional right against self-incrimination, Stanley answered

"Yes." A.24.

Judge Scullin then addressed Stanley's trial attorney and asked him to "put

on the record what you've done to review the charges against your client with him

and also your satisfaction that he understands the consequences of his plea here

today." A.24. In response, Stanley's attorney confirmed that he was satisfied that

Stanley understood the crime charged against him and the consequences of

pleading guilty to that charge. A.24-25.

Judge Scullin then addressed the plea agreement and confirmed that Stanley

was aware that "[i]t sets forth" a maximum available term of imprisonment of 20

years and a range of three years to lifetime supervised release. A.25-26. Judge

Scullin also confirmed that Stanley understood that the plea agreement included a

waiver of "any and all rights to appeal or to collaterally attack this conviction, and

any sentence to a term of imprisonment of 46 months or less[.]" A.26. In addition,

Stanley confirmed that he had discussed the impact of the U.S. Sentencing

4

Guidelines with his attorney and that he understood that the sentence he received would be entirely up to the court. A.27. Judge Scullin also informed Stanley that, at sentencing, the court would consider the various factors provided under 18 U.S.C. § 3553(a), noting that "[t]here's a number of things the court will review and apply[.]" A.28.

"As to the factual basis for the plea," Judge Scullin asked the government to recite the elements it would have been required to prove beyond a reasonable doubt at trial. In response, counsel for the government provided a lengthy recitation of the facts it would have sought to prove, and Stanley responded "Yes" when Judge Scullin asked him whether "the facts as just recited by [the government] are [] in essence correct." A.29-31.

At no point during the plea proceeding did Judge Scullin ask whether Stanley's plea had been influenced by "force, threats, or promises (other than promises in [his] plea agreement." Rule 11(b)(2).

Following Stanley's guilty plea, the district court entered a Preliminary Order of Forfeiture requiring Stanley to forfeit $4,550, "representing . . . gross proceeds traceable to the commission of the offense[.]" A.54. This order was specifically contemplated in paragraph 1(d) of Stanley's plea agreement. A.36.

5

### III.    The Presentence Investigation Report and the Defense Objections

### A.    The Initial PSR Disclosure

The Probation Office submitted its initial presentence investigation report ["PSR"] on April 4, 2022. In its recitation of Stanley's offense conduct, the PSR asserted that, on three separate occasions, one or more of the charged co-defendants had delivered "heroin/fentanyl" to an apartment building in Dewitt, New York where Stanley maintained his residence. ¶¶ 17-19. As with the government's allocution during the plea proceeding, and as with the factual recitation set forth in the written plea agreement, the PSR did *not* allege that Stanley had used his residence to package, repackage, or distribute narcotics to others. *See* A.30-31, 38-39.

The PSR also asserted that, on the day Stanley was arrested, a woman he was living with "removed illegal drugs and a handgun from Staley's apartment and hid them in a purse in a washing machine in the basement of the apartment building." ¶ 20. Then, according to the PSR, when agents returned to the building later that day, the woman stated that she "had taken a black purse containing items belonging to Stanley to the basement," and the agents proceeded to locate the purse in a basement washing machine. *Ibid*.

In contrast to the plea agreement, the PSR's advisory U.S. Sentencing Guidelines calculation included a two-point offense level enhancement for

6

"maintain[ing] a premises for the purpose of distributing a controlled substance," pursuant to § 2D1.1(b)(12). ¶ 29.[1] According to the Probation Office, this was because "[i]nvestigation revealed at least three occasions in September and October 2020 when coconspirators delivered quantities of heroin/fentanyl mixture to the defendant at the defendant's residence, which the defendant then resold to drug customers." *Ibid*. Once again, there was no allegation that Stanley had packaged, repackaged, or sold drugs to other people from his apartment.

### B. Stanley's Argument for a 2-Level "Safety Valve" Downward Departure

In a letter to the Probation Office, Stanley asserted that he had satisfied the "safety valve" criteria provided under 18 U.S.C. § 3553(f), and that he was therefore eligible for a two-point downward departure under U.S.S.G. §§ 5C1.2 and 2D1.1(b)(18). PSR pp. 23-24. Stanley explained that, although he had possessed a gun in his apartment, it was not possessed "in connection with" the charged drug conspiracy. PSR p. 23.

In opposition to this argument, the Probation Office argued that the gun "was recovered by police along with a brick of fentanyl/heroin and $10,689 in cash, . . . all of which were found contained in a purse hidden in the basement of

---

[1] The PSR Guidelines calculation also included a 2-point enhancement for possessing a firearm, under U.S.S.G. § 2D1.1(b)(1). ¶ 28. Stanley did not object to the application of that enhancement. *See* A.73.

the defendant's apartment building." PSR p. 24. In making this claim, however, the

Probation Office did not address the fact that all of those items had been collected,

put in the purse, and stashed in the basement of the apartment building after

Stanley was arrested by another individual who lived in the apartment. *See again*

PSR ¶ 20. Nor did the Probation Office identify any evidence to suggest that, prior

to that event, the gun had ever been in the same room or otherwise near drug

activity or drug contraband.

###     C.     Stanley's Objection to the "Maintaining a Premises" Enhancement

In his letter to the Probation Office, Stanley also objected to the PSR's

inclusion of a "maintaining a premises" enhancement:

> The commentary to the guidelines with respect to this provision
> provides that distributing the controlled substance "must be one of the
> defendant's primary or principal uses for the premises, rather than one
> of the defendant's incidental or collateral uses for the premises." The
> commentary goes on to provide that "[i]n making this determination,
> the court should consider how frequently the premises was used by
> the defendant for manufacturing or distributing a controlled substance
> and how frequently the premises was used by the defendant for lawful
> purposes."
>
> . . . The [PSR] provides that [Stanley] had lived in [the subject
> apartment] for two years prior to his arrest. Accordingly, the premises
> was used almost exclusively as his legitimate residence, and only
> incidentally to aid in his distribution of controlled substances.

PSR p. 22.

8

The Probation Office rejected this argument based on documentation from law enforcement officials indicating that coconspirators had repeatedly "delivered quantities of heroin and fentanyl to the defendant at his apartment." *Ibid.* In addition, the Probation Office noted that it appeared that Stanley "was using his residence as a location to store proceeds from drug trafficking[.]" *Ibid.* In support of its application of the § 2D1.1(b)(12) enhancement, the Probation Office also cited to two prior summary orders from this Court: *United States v. Robtoy*, 848 Fed. App'x 53 (May 24, 2021), and *United States v. Sampel*, 860 Fed. App'x 789 (July 6, 2021). PSR p. 23.

In his sentencing submission, Stanley noted that there was evidence of "several deliveries of drugs . . . [to] his apartment," while emphasizing that there was no evidence "that indicates he was distributing drugs from the apartment." A.63. As such, Stanley argued that "the cases cited in the [PSR] addendum . . . are distinguishable." A.63-64. In reply, the government filed a letter in which it invoked *Robtoy* and *Sampel* and argued that the § 2D1.1(b)(12) enhancement should apply even if Stanley did not distribute drugs from his apartment. A.67. This was because, according to the government: (1) Stanley "repeatedly received quantities of fentanyl and heroin at [his] residence"; and (2) on the day of his arrest the purse containing drugs, a firearm, and a large amount of currency were found in the basement of Stanley's apartment building. *Ibid*.

9

## IV.    The Sentencing Proceeding and the District Court's Rulings on Disputed Issues Relating to the Guidelines Calculation

Stanley appeared in court for sentencing on August 10, 2022. At the outset of the proceeding, the district court confirmed it had reviewed the PSR and its addendum, the plea agreement, and the parties' sentencing submissions, and that it had "considered the sentencing guidelines manual and the various factors [] outlined in" Section 3553(a). A.71. Judge Scullin then heard oral arguments from the parties and ruled on the disputed Guidelines issues.

### A.    The Defense's Request for a "Safety Valve" Departure

As for Stanley's request for a "safety valve" departure, defense counsel argued that the evidence only showed that a firearm had been present in Stanley's apartment before his arrest. A.73. In response, the government noted that "although not dispositive of this issue in its entirety," Stanley had not objected to the imposition of a separate two-point enhancement for possession of a dangerous weapon. A.74.

In denying Stanley's request, Judge Scullin reasoned that "[c]learly [Stanley] had possession of weapons" and "[t]he fact that he is distributing drugs there and had weapons in his home, that's pretty clear it's in connection with the offense insofar as he would have to use it to protect what he has in the home." A.75-76.

10

### B.     The "Maintaining a Premises" Enhancement

With respect to the § 2D1.1(b)(12) "maintaining a premises" enhancement, Stanley's trial counsel argued that "[i]f you're selling drugs . . . you have to keep your drugs and your proceeds someplace." A.72. As such, "[t]he presence of drugs and the presence of [] money" in Stanley's apartment on the day of his arrest, which was "the [only] asserted basis by the government [and the Probation Office] for the enhancement, . . . would apply virtually to anybody" involved in drug activity. A.72.

In response, the government argued that Stanley's drug activities were "not merely incidental to the [subject] premises acting as a residence, specifically because . . . [Stanley] was receiving large quantities of controlled substances at that address." A.74.

In ruling against Stanley, Judge Scullin stated that "case law in support of the government's position" somehow made it clear that the presence of "large quantities of [] drugs" in Stanley's apartment, which "were there for further distribution" supported application of the enhancement. A.75.

### C.     The Sentence Imposed

After hearing arguments from defense counsel and from Stanley relating to his request for a downward variance from the Guidelines, Judge Scullin imposed a sentence of 30 months' imprisonment, to be followed by three years of supervised

release, forfeiture in the amount of $4,550, and a special assessment of $100. A.79-80.

### V. Appellate Proceedings

Judgment was entered on August 18, 2022. A.83. Stanley filed a timely notice of appeal on August 21, 2022. A.90. On, September 16, 2022, the undersigned was appointed as substitute CJA appellate counsel. Dkt. No 10.

After obtaining and reviewing the district court transcripts and other record documents, the undersigned determined that: (1) there are no viable and unwaived grounds for a direct appeal of Stanley's conviction or sentence; (2) the appeal waiver contained in the plea agreement is enforceable as to Stanley's conviction and his sentence; and (3) even if there were viable and unwaived grounds for an appeal, a reversal of Stanley's conviction would present an unacceptable risk of adverse consequences in the form of a harsher sentence. As such, on December 9, 2022, the undersigned mailed Stanley a letter informing him of "my intention to file a brief (pursuant to *Anders v. California*, 386 U.S. 738 (1967)) stating that I am not aware of any meritorious issues, along with a motion to be relieved as counsel." Because "[t]he filing of an *Anders* brief will likely result in the dismissal of [the] appeal," the undersigned's letter also advised that Stanley had the right to: "(1) do nothing; (2) request that the Court [appoint] substitute counsel; (3) hire a

private attorney; (4) submit *pro se* arguments in support of [the] appeal; or (5) voluntarily withdraw the appeal."

<h2 style="text-align:center">Summary of the Argument</h2>

Despite the district court's failure to comply with the basic commands of Rule 11(b) of the Federal Rules of Criminal Procedure, there are no viable issues for an appeal of Stanley's conviction. Moreover, Stanley explicitly waived his right to appeal the conviction resulting from his guilty plea, and he does not wish to have his plea rescinded at this time. Finally, it is the undersigned's belief that a reversal of Stanley's conviction would give rise to an unacceptable risk that he would lose the benefit of his plea agreement and ultimately receive a harsher custodial sentence.

With respect to the sentence imposed, it is the undersigned's opinion that there would ordinarily be viable grounds for an appeal based on: (1) the district court's clear misapprehension of the facts relating to Stanley's request for a "safety valve" departure; and (2) the application of a U.S.S.G. § 2D1.1(b)(12) "maintaining a premises" enhancement. However, Stanley voluntarily, knowingly, and effectively waived his right to appeal "[a]ny sentence to a term of imprisonment of 46 months or less," and in exchange he received the benefit of the bargain he struck with the government.

13

**Argument**

The Supreme Court has held that court-appointed appellate counsel may move to be relieved if, upon a thorough and conscientious review of the record, they are convinced that there are no meritorious grounds for an appeal. *Anders*, 386 U.S. at 744-45. In *United States v. 777 Greene Avenue*, 609 F.3d 94, 98 (2d Cir. 2010), this Court held that "there are several prerequisites that must be satisfied" before appointed counsel may be permitted to withdraw: "Among other things, counsel must: (1) represent to the Court that he or she is convinced, after conscientious investigation, that the appeal is frivolous; and (2) submit a brief that identifies, by record references, issues that have at least arguable merit supported by legal authority." *Id.*, at 98-99 (internal quotations omitted). In addition, this Court has held that, where applicable, *Anders* briefs must "contain a discussion regarding [the defendant's] guilty plea." *United States v. Ibrahim*, 62 F.3d 72, 74 (2d Cir. 1995) (per curiam).

**I.     There are no meritorious grounds for an appeal of Stanley's conviction.**

In light of Stanley's knowing and voluntary guilty plea, it is the undersigned's opinion that there are no non-frivolous grounds for an appeal of that conviction.

14

**A.      There is no indication that the district court's failure to comply with Rule 11(b) affected Stanley's decision to plead guilty.**

The change-of-plea proceeding was conducted in only partial compliance with Rule 11(b) of the Federal Rules of Criminal Procedure. While Judge Scullin did address Stanley in open court and place him under oath, A.21, he did *not* advise Stanley of "the government's right, in a prosecution for perjury or false statement, to use against [Stanley] any statement that [he] gives under oath," as required under Rule 11(b)(1)(A).

In response to Judge Scullin's questioning, Stanley confirmed that he was aware that he had a right to persist in his prior plea of not guilty, and that if he did so he would have the right: to a jury trial; to the assistance of counsel; to cross-examine witnesses against him; to testify and present evidence; and to testify if he chose to. A.23-24; Rule 11(b)(1)(B)-(E). Stanley also confirmed that he understood that, by pleading guilty, he would "waive all those rights associated with [a] trial." A.24; Rule 11(b)(1)(F). However, Judge Scullin did *not* "inform [Stanley] of" or "determine that [Stanley] underst[ood]" that he would have the right at trial "to be protected from compelled self-incrimination," as required under Rule 11(b)(1)(E). Nor did Judge Scullin address the question of whether Stanley's plea was "voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)," as required under Rule 11(b)(2).

15

In *United States v. Andrades*, 169 F.3d 131, 132 (2d Cir. 1999), this Court emphasized that district courts must administer plea proceedings "actively, diligently and with full attention to detail." That did not happen in this case. However, as Rule 11(h) provides, "a variance from the requirements of this rule is harmless error if it does not affect substantial rights." Accordingly, it is important to note that there is no indication in the record that Judge Scullin's errors had any effect on Stanley's decision to plead guilty.[2] *See United States v. Dominguez Benitez*, 542 U.S. 74 (2004); *United States v. Lloyd*, 901 F.3d 111, 115 (2d Cir. 2018). Even more to the point, Stanley wishes to "adhere to his plea." *See United States v. Renaud*, 999 F.2d 622, 625 (2d Cir. 1993). Therefore, the undersigned submits that the errors of omission arising from Judge Scullin's expedited plea process may be "disregarded" in this case. Rule 11(h).

\*

Aside from the three errors noted above, it appears that the remainder of the plea hearing was conducted in substantial compliance with Rule 11(b). As far as informing Stanley of "nature of [the] charge" to which he was pleading, Judge

---

[2] The plea agreement advised Stanley that his guilty plea would entail a waiver of his right "to remain silent and be protected against compelled self-incrimination." A.41. During the plea proceeding, Stanley confirmed that he had reviewed the plea agreement with his attorney and that he did not have any questions about it. A.25.

16

Scullin merely noted that the plea agreement Stanley had signed called for him to plead guilty to Count One of the indictment, which "charges you with conspiracy to distribute and possession with intent to distribute one or more controlled substances involving fentanyl and heroin." A.25; Rule 11(b)(1)(G). *See Andrades*, 169 F.3d at 135 (noting that Judge Scullin's "effort to ensure that [the defendant] understood the nature of the conspiracy charged was limited to . . . reading the charge and eliciting a 'yes, sir' from [the defendant]."). However, as noted below, counsel for the government subsequently provided a fulsome explanation of the elements of the crime and the evidence it would have sought to introduce to prove those elements trial.[3] *Supra*, p.18.

With respect to the maximum and available penalties, Judge Scullin described how, according to the plea agreement:

> there is a special assessment of $100; secondly, there is a forfeiture of $4,550; and then there would be a term of imprisonment to be imposed and the maximum term of imprisonment to be imposed would be 20 years; . . . and there would be a fine . . . up to $1 million; supervised release would follow . . . and that could be anywhere from three years to life[.][4]

---

[3] The plea agreement also provided a description of the offense and a factual basis for the charge. A.37-38.

[4] *See* 21 U.S.C. § 841(b)(1)(C) (maximum term of 20 years' imprisonment, maximum fine of $1,000,000, and minimum term of three years' supervised release); 21 U.S.C. § 853 (regarding forfeiture); 18 U.S.C. § 3013 (mandatory special assessment of $100).

A.25-26; Rule 11(b)(1)(H)-(L). Judge Scullin also confirmed that Stanley was aware of the district court's obligation to calculate and consider the U.S. Sentencing Guidelines and the various sentencing factors provided under § 3553(a). A.27-28; Rule 11(b)(1)(M).

In response to Judge Scullin's questioning, Stanley answered "Yes" when he was asked whether it was correct that his plea agreement contained a provision through which he would "agree to waive any and all rights to appeal or to collaterally attack [his] conviction[] and any sentence to a term of imprisonment of 46 months or less." A.26; Rule 11(b)(1)(N). (There was no discussion of possible immigration consequences of a guilty plea, as contemplated under Rule 11(b)(1)(O). But as the PSR notes at page 2, Stanley is a natural-born U.S. Citizen born in Syracuse, New York.).

Finally, "[a]s to the factual basis for the plea," counsel for the government provided a lengthy summary of the evidence it would have expected to present at trial, and Stanley confirmed that the allegations described by the government were, in essence, correct. A.29-31. *See Andrades*, 169 F.3d at 136 (noting that a factual basis may be stablished by way of "information from the government.").

18

**B.    The appeal waiver in Stanley's plea agreement precludes an appellate challenge to his conviction.**

Even if there were non-frivolous grounds for a direct appeal of Stanley's conviction, the record confirms that Stanley knowingly and voluntarily waived his right to any such appeal by accepting and receiving the benefit of his plea agreement.

In *United States v. Gomez-Perez*, this Court noted that, "[i]n some cases, a defendant may have a valid claim that [a] waiver of appellate rights is unenforceable, such as when the waiver was not made knowingly, voluntarily, and competently[.]" 215 F.3d 315, 319 (2d Cir. 2000).[5] In this case, during the change-of-plea hearing, Judge Scullin confirmed that Stanley understood the plea agreement and that he had reviewed it with his attorney. A.25. In addition, Judge Scullin provided Stanley an opportunity to ask questions about the plea agreement and then specifically confirmed that Stanley was aware of the terms of the appeal waiver contained therein. A.25-26. Therefore, absent any contrary indication in the record, there is no basis to argue that the appeal waiver was not made knowingly, voluntarily, or competently.

---

[5] While the undersigned has concluded that this case involves a valid appellate waiver, the "limited" *Anders* process spelled out in *Gomez-Perez* is not applicable because the government has not "file[d] a motion to dismiss based on the defendant's waiver." 215 F.3d at 319.

**C.    An appeal of Stanley's conviction would give rise to an unacceptable risk of adverse consequences.**

Even if there were viable grounds for an appeal that could survive the plea agreement's appeal waiver, and even if Stanley did not wish to "adhere to his plea," *Renaud*, 999 F.2d at 625, it is the undersigned's opinion that a successful challenge to Stanley's conviction under Count One would give rise to "unacceptable risks of a harsher sentence." *Ibrahim*, 62 F.3d at 74.

Based on the discovery the undersigned has reviewed, it appears that the amount and quality of the inculpatory evidence available to the government (and the likelihood of that evidence's admissibility) is such that Stanley would have almost certainly been convicted if he had proceeded to trial. As such, a reversal of his guilty plea conviction at this point would vitiate the benefit of the bargain contained in the plea agreement and subject him to a high degree of risk of a "harsher sentence" at a time when he has already completed the custodial portion of his sentence. *Ibrahim*, 62 F.3d at 74.

**II.    Stanley waived his right to appeal his sentence.**

"In applying the abuse of discretion standard in sentencing appeals," this Court is "constrained to review for reasonableness." *United States v. Bonilla*, 618 F.3d 102, 108 (2d Cir. 2010). Reasonableness review "encompasses two

20

components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc).

In light of the "particularly deferential" standard this Court applies to questions of substantive reasonableness, *Id.*, at 188 n.5, there is no non-frivolous basis for an appeal of the sentence imposed. *See also id.*, at 189 (A sentence may be set aside for substantive unreasonableness "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'") (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)).

With respect to procedural reasonableness, there would ordinarily be viable grounds for an appeal based on the district court's rulings on: (1) Stanley's request for a "safety valve" departure; and (2) the application of a § 2D1.1(b)(12) "maintaining a premises" enhancement. However, there does not appear to be way to circumvent the plea agreement's prohibition on an appeal of "[a]ny sentence to a term of imprisonment of 46 months or less." A.40.

### A.    There are viable grounds to argue that the district court committed two procedural errors at sentencing.

A district court commits procedural error if it improperly calculates the applicable U.S. Sentencing Guidelines range. *See United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) (internal quotation omitted). In this case, if not for the plea

21

agreement's appeal waiver, there would be viable grounds for an appeal on the basis that the district court abused its discretion in two separate ways.

First, Judge Scullin's explanation for his ruling on Stanley's request for a "safety valve" departure consisted of two rather stark misstatements of fact. According to Judge Scullin, "[c]learly [Stanley] had possession of weapons," and "[t]he fact that he is distributing drugs [from his apartment] and had weapons in his home, that's pretty clear it's in connection with the offense insofar as he would have to use it to protect what he has in the home." A.75-76. In fact, the record does not include *any* evidence (or any allegation from the government) that Stanley ever: (1) had possession of more than one weapon or; (2) distributed drugs in or from his apartment. These "facts," which comprised the entirety of the district court's explanation for its denial of Stanley's request for a "safety-valve" departure, appear to have originated with Judge Scullin at the time of sentencing.[6]

Second, there are reasonable grounds to argue that the application of a § 2D1.1(b)(12) "maintaining a premises" enhancement amounted to an abuse of discretion. While the PSR notes that Stanley received drugs at his apartment

---

[6] Moreover, based on the information contained in the PSR and in discovery, there does not appear to be any evidence that a firearm was in physical proximity to drugs or drug proceeds in Stanley's apartment—that is, until after his arrest, when another individual collected those items together in a purse and hid them in the basement of the apartment building. PSR ¶ 20; *Supra*, p.6.

building on several occasions, there is nothing in the record to indicate that he ever used his apartment to redistribute those drugs or do anything else in connection with the conspiracy to which he pleaded guilty. *See* § 2D1.2 cmt. 17 ("Manufacturing or distributing a controlled substance . . . must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises."). While Judge Scullin vaguely alluded to "case law in support of the government's position" at sentencing, A.75, neither of the government's cited cases support the conclusion that someone who merely receives drugs at their home can be said to "maintain" that home "for the purpose of manufacturing or distributing a controlled substance." § 2D1.1(b)(12). *See Sampel*, 860 Fed. App'x at 792 (holding that the discovery of "a digital scale with white powder residue, gloves, plastic bags, and a large amount of cash" in the defendant's apartment, "[w]hen considered alongside . . . evidence that [the defendant] conducted at least two meetings in his home related to his drug business," supports application of the enhancement); *Robtoy*, 848 Fed. App'x at 54-55 (noting that "the parties agree that the premises in question served doubly as [the defendant's] residence and as a base for drug distribution" and recounting evidence of a "history of prior purchases from that location").

23

**B.    The district court's errors notwithstanding, Stanley's appellate waiver is enforceable.**

In *Gomez-Perez*, this Court held that an appeal waiver provision in a plea agreement may be unenforceable

> when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial[,] or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

215 F.3d at 319 (internal citations and quotations omitted). However, this Court has held that "other meaningful errors" made in connection with sentencing "are insufficient to void an appeal waiver." *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011). As such, "notwithstanding [a] defendant's claim that the sentencing court failed to make certain downward departures," a valid appeal waiver will be enforced and an appeal based on such a claim will be subject to dismissal. *Id.*, at 147-48 (citing *United States v. Rivera*, 971 F.2d 876, 896 (2d Cir. 1992)).

As discussed above, the appeal waiver in this case was made knowingly and voluntarily. *Supra* p.19. Furthermore, Judge Scullin did not fail to enunciate a reason for the sentence imposed, and there is no basis in the record to argue that the sentence was based on an impermissible factor or that the government breached

24

the plea agreement. Therefore, the appeal waiver is enforceable with respect to Stanley's sentence.

## Conclusion

For the foregoing reasons, there are no viable and unwaived grounds for an appeal as to Stanley's conviction or sentence. Therefore, CJA appellate counsel's motion to be relieved should be granted.

Dated:     New York, New York        Respectfully submitted,
                January 18, 2023

                                                /s/Lucas Anderson
                                                Lucas Anderson
                                                *Of Counsel*
                                                Rothman, Schneider,
                                                      Soloway & Stern, LLP
                                                  100 Lafayette Street, Suite 501
                                                New York, New York 10013
                                                (212) 571-5500

25

## <u>Certificate of Compliance</u>

This brief complies with Rule 32(a) of the Federal Rules of Appellate Procedure and with the Local Rules of this Court. This brief contains 5,533 words, including footnotes and headings, and was printed in proportionally-spaced 14-point Times New Roman typeface.

Dated:     New York, New York     Respectfully submitted,
               January 18, 2023

/s/Lucas Anderson
Lucas Anderson
*Of Counsel*
Rothman, Schneider,
    Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-5500

26

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY OVERNIGHT EXPRESS** |
| COUNTY OF NEW YORK | ) | | **MAIL** |

     I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

     **On January 18, 2023**

deponent served the within: **Brief for Defendant-Appellant Pursuant to *Anders v. California*, 386 U.S. 738 (1967)**

     **upon:**

Joshua Stanley
*Defendant-Appellant*
Syracuse Pavilion Residential Reentry Center
701 Erie Boulevard East
Register No. 31417-509
Syracuse, New York 13210

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on January 18, 2023**

**MARIANA BRAYLOVSKIY**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026

**Job# 317819**